Argued April 20, affirmed May 31, rehearing denied June 21, 1927.
## SOPHRONIA LUDGATE *v.* ROBERT SOMERVILLE.
(256 Pac. 1043.)

**Municipal Corporations—Zoning Ordinance must have Some Rational Relation to Public Health, Morals, Safety or General Welfare.**

1. Only justification for city zoning ordinance is that it have some rational relation to public health, morals, safety or general

1. Zoning ordinances, see notes in 43 A. L. R. 668; 38 A. L. R. 1496; 33 A. L. R. 287; 19 A. L. R. 1395.

welfare, and general scheme of maintaining and perpetuating high class, exclusively residential district promotes general welfare.

**Covenants—Restrictive Covenants Imposed by Former Owner on All Subsequent Owners Held not Contrary to Public Policy.**

2. Restrictive covenants imposed by original owner of land on all subsequent owners of lots platted *held* not contrary to public policy.

**Covenants—Purchaser of Residence Property, Relying on Restrictive Covenants, may Enforce Them Against Other Lot Owners, Regardless of City Zoning Ordinance.**

3. Purchaser of residence property in reliance on covenants in deed against use of land for business purposes acquires property right of which he cannot be divested by city zoning ordinance.

**Injunction—Public Inconvenience in Requiring Consumers of Gasoline to Go 1,900 Feet Farther Held not to Prevent Enforcement of Restrictions on Property.**

4. Public inconvenience in having to go 1,900 feet farther to unrestricted property is not sufficient to prevent property owner enforcing restrictions against erecting filling station, regardless of profit owner of such filling station might make therefrom.

**Constitutional Law—Police Power Should not be Exercised to Thwart Lawful Agreements not Operating Against Public Welfare.**

5. Police power is not to be exercised to thwart or nullify lawful agreements not operating to detriment of public welfare.

**Covenants—City Zoning Ordinance Held to have No Effect to Remove Covenant Restrictions on Property.**

6. City zoning ordinance, permitting business in particular zones, *held* to have no effect to remove restrictions in deed sought to be enforced by neighboring property owner.

**Injunction—Whether Violation of Restrictive Covenants will be Enjoined is Matter for Sound Legal Discretion of Chancellor, to be Determined in Light of Circumstances.**

7. Though ordinarily equity may be invoked to enforce negative covenants and clauses in deed restricting use of property, whether injunction will be granted is matter within sound legal discretion of chancellor, to be determined in light of all facts and circumstances.

**Injunction—Each Case to Enjoin Violation of Restrictive Covenants must be Considered in Light of Its Own Particular Facts.**

8. In suit to enjoin violation of restrictive covenants, each case must be considered in light of its own particular facts.

2. See 7 R. C. L. 1114.
8. See 7 Cal. Jur. 1116.

Injunction—Evidence That Locality was Still Residential District Held to Sustain Injunction Against Building Filling Station, Contrary to Restrictive Covenant.

9. In property owner's suit to enjoin building filling station, evidence that town and locality in question was residential district *held* to sustain enjoining building filling station, contrary to restrictive covenant, as against defense that character of district had changed.

Injunction—That Plaintiff's Residence Property Might be More Valuable for Business Purposes Held not to Prevent Her Enforcing Restrictive Covenant Against Filling Station on Neighboring Property.

10. Fact that plaintiff's property might be more valuable for business purposes does not prevent her from enforcing by injunction restrictive covenant against erecting filling station on neighboring property, regardless of opinion of defendant and other lot owners in district that restriction is no longer beneficial.

Deeds, 18 C. J., p. 385, n. 96, p. 394, n. 16, 18, p. 397, n. 61, p. 399, n. 69, 80, p. 400, n. 88, p. 401, n. 93 New.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Platt, Platt, Fales & Smith,* with an oral argument by *Mr. George Black, Jr.*

For respondent there was a brief and oral argument by *Mr. George W. Gearhart.*

BELT, J.—This is a suit to enjoin the violation of certain deed restrictions upon lots in Laurelhurst Addition to the City of Portland. This addition was platted in 1908 and all deeds subsequently executed contained restrictions, the purpose of which was to establish a strictly residential district. The restrictions ran for a period of 25 years from and after January 1, 1909. Laurelhurst has 117 blocks subdivided into 2,135 lots. It is bounded on the north by Halsey Street; on the south by East Stark Street; on the east by East 43d Street; and on the

west by East 32d Street. The northwest corner of this addition is diagonally crossed by Sandy Boulevard, one of the main arteries of travel leading from the city to the famous Columbia River Highway, which leaves it at the intersection of East 37th Street. Reference to the following plat will help to explain the situation of the parties.

Plaintiff is the owner of Lot 11, Block 38 and ever since she acquired same in 1919 has there maintained her home. Defendant owns the triangular lot in Block 37, which is 100 feet from plaintiff's property. He obtained title thereto in February, 1924, and proposes, unless restrained, to construct on it a modern gasoline service station. It is his contention that the part of Laurelhurst abutting upon Sandy Boulevard has so completely changed in character that it is no longer suitable for residence purposes. He asserts that his lot has absolutely no value except for business purposes; that the construction of a gasoline service station would be of no injury to plaintiff; and that it would be inequitable, oppressive and unjust to deprive him of the use of his property as contemplated. It is also claimed that the building restrictions relative to the property in question have been superseded by a zoning ordinance initiated by the people of the City of Portland in 1924, which, among other things, purports to permit certain business activity in that portion of Laurelhurst on both sides of Sandy Boulevard and 100 feet back thereof.

From a decree enjoining him in accordance with the prayer of the complaint, defendant appeals.

1, 2. There is no question that the construction of a gasoline filling station is in violation of the building restrictions in Laurelhurst. What is the effect of the zoning ordinance purporting to permit the operation of such business? Does it supersede or nullify the restrictions previously put upon the property by those who platted it? This interesting and important question is *res integra* in this state. After diligent search we have been able to find only one jurisdiction wherein the point has been squarely passed upon: *Gordon* v.

*Caldwell,* 235 Ill. App. 170. The zoning ordinance of Portland divides the city into four districts. It undertakes to place no restriction upon single detached dwelling-houses. As stated in Section 2 of the ordinance it was "for the purpose of regulating the location of trades and industries * * ." The primary object of the law, without doubt, was to prevent the invasion of residential districts by commercial interests. The original owner of Laurelhurst undertook to do by covenant and agreement that which is in keeping with the general legislative policy of the city. The only justification for such exercise of the police power is that it has some rational relation to the public health, morals, safety or general welfare. The general scheme of maintaining and perpetuating Laurelhurst as a high class, exclusively residential district certainly promotes the general welfare. The contractual obligations imposed upon all lot owners is not contrary to public policy. An act which so deprives a citizen of his property rights cannot be sustained under the police power unless the public health, comfort or welfare demands such enactment. It cannot well be argued that the purpose to enjoy that which we are pleased to call home and to protect it against the encroachment of commercial interests is inimical to public welfare. The precise question was considered in *Gordon* v. *Caldwell, supra,* and the court said:

"Notwithstanding said (zoning) ordinance the owners of said lots have the constitutional right to make use of them in accordance with such restrictions, so long as they do not endanger or threaten the safety, health and comfort or general welfare of the public, and the fact that said subdivision has been so classified does not require the owners of said lots to

yield the right secured by such covenants. We fail to see that their enforcement in anywise contravenes public policy."

3. Plaintiff purchased her lot in reliance upon the covenants in her deed and had the right to expect that every other lot owner in Laurelhurst would comply therewith: *Grussi* v. *Eighth Church of Christ Scientist*, 116 Or. 336 (241 Pac. 66). Such is a property right of which she cannot be divested by legislation of the character in question.

4, 5. Who is clamoring for this gasoline service station? Surely not the public. No great public inconvenience will result if consumers of gas are obliged to go 1,900 feet to that part of Sandy Boulevard to which the restrictions do not apply. True, this triangular lot, from defendant's standpoint, would make an ideal service station and no doubt much profit would result. However, the call of Mammon makes no appeal to equity. Police power is not to be exercised to thwart or nullify lawful agreements which in no way operate to the detriment of the public welfare.

6. Besides Sandy Boulevard, there are other main arteries traversing Laurelhurst. If the restriction is to be removed as to one it may be as to others. If the city can authorize the operation of business within the 100-foot strip it could extend back for a thousand feet, or it could throw the entire district open to commercial activity. We conclude that the zoning ordinance has no validity so far as it contravenes the restrictions in question.

7, 8. Has the residential character of Laurelhurst adjacent to Sandy Boulevard so changed by reason of surrounding business activity that equity will not

intervene to prevent the violation of these building restrictions? Has there been such a radical change that the restrictions can no longer serve the purpose for which they were intended? Ordinarily, equity may be invoked to enforce negative agreements and clauses in deeds restricting the use of real property: *Duester* v. *Alvin,* 74 Or. 544 (145 Pac. 660). However, it does not follow that equitable jurisdiction will be exercised in all cases where there has been a violation of a legal right. Under some circumstances the party injured may be relegated to his remedy at law. Whether injunctive relief is to be granted is a matter within the sound legal discretion of the chancellor, to be determined in the light of all the facts and circumstances. Many authorities could be cited wherein equity has refused to intervene and, perhaps even more where it has assumed jurisdiction. Each case must be considered in the light of its own particular facts. For this reason it would be a useless and endless task to review and distinguish the large number of cases cited. We prefer to discuss the facts in the instant case as applicable to well-recognized equitable principles.

Many courts have undertaken to state the rule for the interposition of equity in proceedings of this character. We quote with approval the following clear and concise statement found in *Robinson* v. *Edgell,* 57 W. Va. 157 (49 S. E. 1027):

"The right to invoke relief by injunction in such cases is not absolute, however. To a certain extent, the jurisdiction is discretionary. It is governed by the same general principles which control the jurisdiction to compel specific performance of contracts. Where a proper case for its exercise is shown, relief is granted as a matter of course, but if, under the

conditions and circumstances obtaining, the granting of the relief sought would work injustice or be ineffectual of any meritorious result, it will be refused. If, therefore, the restrictive covenants in deeds, conveying lots, were made with reference to the continuance of existing general conditions of the property and surroundings, but in the lapse of time there has been a change in the character and surroundings, so as to defeat the purposes of the covenants and to render their enforcement an inequitable, unjust and useless burden upon the owner of the lot, equity will refuse its aid and leave the plaintiff to his remedy at law: *Trustees* v. *Thatcher,* 87 N. Y. 311 (41 Am. Rep. 365); *Page* v. *Murray,* 46 N. J. Eq. 331 (19 Atl. 11)."

In *Sandusky* v. *Allsopp* (N. J.), 131 Atl. 633, it is said:

"When the parties bound by the covenant have not themselves waived or abandoned or forfeited the restriction upon the use of land, a change of character of the surrounding territory will not induce a court of equity to refuse to enforce the covenant, unless the influence of the change upon the restricted area is such as to clearly neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant. *Page* v. *Murray,* 46 N. J. Eq. 328 (19 Atl. 11); *Trustees of Columbia College* v. *Thatcher,* 87 N. Y. 311 (41 Am. Rep. 365.)"

And also for statement of the rule see: *Castleman* v. *Avignone,* 56 App. D. C. 253 (12 Fed. (2d) 326); *Spahr* v. *Cape,* 143 Mo. App. 114 (122 S. W. 379); *Bohm* v. *Silberstein,* 220 Mich. 278 (189 N. W. 899); *Miles* v. *Clark,* 44 Cal. App. 539 (187 Pac. 167); *Landell* v. *Hamilton,* 175 Pa. 327 (34 Atl. 663, 34 L. R. A. 227); *Windemere etc. Assn.* v. *Bank,* 205 Mich. 539 (172 N. W. 29); *Rubel Bros.* v. *Dumont Coal & Ice Co.,* 111 Misc. Rep. 658 (182 N. Y. Supp. 204); 233 N. Y. 618 (135 N. E. 942); *Gordon* v. *Caldwell, supra.*

9, 10. Let us apply the law as above stated to the facts in the instant case. Here no question of waiver or abandonment is involved. There are not now nor have there ever been any business enterprises within the boundaries of Laurelhurst. The owners of homes in this district have ever been vigilant to repel the advance of commercial interests. All of the lots within the district have been sold and in no instance has any violation of building restrictions been tolerated. If the principle of law upon which defendant relies is to be applied in this case it must be by reason of changed conditions outside of Laurelhurst. There is no basis for any claim that Laurelhurst itself has changed its residential character unless it be predicated on the fact that there is increased traffic on Sandy Boulevard, but this, in itself, clearly would not warrant a denial of equitable relief. Abutting upon Sandy Boulevard in this addition are fifty lots, about thirty of which are occupied by residences. On Sandy Boulevard east of 37th Street various business enterprises are located and such condition prevails continuously to 43d Street. Then residences predominate until 50th Street is reached and from there on east business houses and residences are intermingled. On the west of Laurelhurst, between 28th and 33d Streets, there are ten residences on Sandy Boulevard. Five or six factories or business enterprises of various kinds are also located in this immediate vicinity, none of which, in our opinion, has radically changed or influenced the suitability of plaintiff's property as a home. It may be that defendant's lot is more suitable and valuable for business purposes than for a residence but, at the time

he purchased it in 1922, he was unquestionably aware of the condition of which he now complains. The opinion of defendant and other lot owners in this district that the restriction is no longer beneficial does not deprive the plaintiff of her right to rely thereon. We are not prepared to say, in view of the evidence, that the maintenance of this part of Laurelhurst as a residential district is of no substantial benefit to plaintiff. It is true that it might be more valuable for business purposes, but there are some things in this strenuous age of commercialism that count more than cash. It is her home.

Some authorities go to the extent of holding that changed conditions outside of a residential district have no material bearing upon the right of a property owner to ask equitable relief. In *Bohm* v. *Silberstein, supra,* it is said:

"It appears that the restrictions imposed have been maintained in this subdivision. That the Maxwell motor car factory, buildings used for business purposes and a public school have been erected abutting on the streets surrounding this subdivision does not nullify the restrictions or render it inequitable to enforce them. The question presented is not whether any person would, under existing conditions, purchase vacant property in the subdivision for residential purposes, but may the plaintiffs enjoy the homes which they have erected relying upon the restrictions, free from the disturbances which the conduct of business therein would necessarily produce?"

Also in support of this holding see *Thompson* v. *Langan,* 172 Mo. App. 64 (154 S. W. 808), and cases therein cited.

Appellant relies strongly upon the leading case of *Trustees of Columbia College* v. *Thatcher, supra,* but

an examination of the facts in that case discloses that it should not be considered as controlling here. In the Thatcher case an elevated railway was constructed in front of and above defendant's property so that passengers waiting at the station could easily look through the windows of defendant's residence. In view of this situation and of the great amount of noise attending the coming and going of trains it was held that defendant's property was no longer suitable for residence purposes and that it would be idle for equity under such circumstances to enforce restrictions. The facts in that case are far removed from those before us for consideration. The same might be said of *Jackson* v. *Stevenson*, 156 Mass. 496 (32 Am. St. Rep. 476, 31 N. E. 691), upon which defendant also relies. *Pierce* v. *St. Louis Union Trust Co.*, 311 Mo. 262 (278 S. W. 398), is an instructive case in which the authorities are reviewed and one which is in keeping with the conclusions here reached.

The trial court exercised its discretion in assuming equitable jurisdiction of this cause and we see no reason to interfere therewith. The decree of the lower court is affirmed.

AFFIRMED.    REHEARING DENIED.