# Richmond

F. C. AULT, ET ALS. v. MARGARET V. SHIPLEY, ET ALS.

April 19, 1949.

Record No. 3420.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Jones, Woodward & Miles,* for the appellants.

*Thomas C. Phillips, Stuart Carter* and *Love B. Rouse,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The appellants, who were the complainants in the trial court, filed their bill praying for an injunction to restrain the defendants, appellees here, from violating a certain building restriction. The court was of the opinion that the conditions had so changed in this particular locality that it would have been inequitable to have perpetuated the temporary injunction which had been granted, and the bill was dismissed.

The appellants each own one or more lots in a real estate development in Bristol, known as Virginia Heights, and the defendant, Margaret V. Shipley, owns all of block 5, which includes lots 1 to 9, inclusive, in the same development. She considers her husband, the defendant, E. R. Shipley, as joint owner of the lots but he is not the record owner. He manages her interests.

Elma Shipley, the daughter of Margaret V. and E. R. Shipley, took title to a tract of 266 acres from Elizabeth

Read in 1934, and the defendants then began the development of the tract as a residential subdivision known as Virginia Heights.

In 1936, Elma Shipley conveyed the entire tract to Shipley Land Company, Incorporated, whose stock, in the main, has been and is owned by the defendants and their daughter, Elma; E. R. Shipley being the president, Margaret V. Shipley, vice-president, and Elma Shipley, secretary. A plat of the Virginia Heights development is filed as an exhibit in the cause.

The purpose of the defendants, Mr. and Mrs. Shipley, was to have a strictly residential section development, and they caused to be written into the deed from Mrs. Read to Elma Shipley, in 1934, these covenants: "It is further agreed that this conveyance is made upon the following conditions and building restrictions and which are hereby made covenants running with the land, and binding upon the purchaser, her heirs and assigns, for a period of twenty years from this day:

"1st: Said property is not to be sold or leased to any person of African descent.

"2nd: No dwelling house erected on any lot fronting on Lee Highway is to cost less than $3,500.00. No dwelling house fronting on any street other than Lee Highway is to cost less than $1,500.00.

"3rd: No dwelling house, private garage, or other out building is to be built closer than 75 feet to the street line in front of same.

"4th: Not more than one dwelling house is to be built on any one lot, but all necessary and proper out houses may be built in connection with such dwelling house.

"5th: No store house, garage, filling station, or any other building shall be erected on any of said lots, except a dwelling house, together with the necessary and proper out buildings, and embracing among them the right to a garage for private use.

"The foregoing conditions and building restrictions are to be embraced in all deeds made by said second party to platted lots in said Read Farm Addition."

All of the deeds to the various purchasers have contained these same restrictions. The defendants have advertised the tract as a residential section, and there were at the time of the suit from 75 to 100 residences in this development, the values of which range from $6,000 to $40,000. From 25 to 40 per cent. of these homes exceed $15,000 in value. The appellants purchased their respective lots in the addition in reliance upon the building restrictions.

The defendant, Margaret V. Shipley, secured the title to block 5, including lots 1 to 9, inclusive, in this addition, and the conveyance to her was made subject to the restrictions. Her immediate predecessor in title to block 5 was her son, Garland Shipley, and he had received the title to these lots subject to the same restrictions.

This entire tract adjoined the limits of the city of Bristol, and in 1942, when the city limits were extended, it was brought into the city. The city of Bristol then passed a zoning ordinance in which was designated an area for a neighborhood shopping center. Block 5, including the particular lots in question, lay within that area.

There are no buildings other than dwellings within the development. There is one residence in which an antique furniture business is conducted. In another residence candy is being manufactured in the basement, and in still another residence the defendants conduct their real estate business.

Outside the lines of the development are a tabernacle, three filling stations, a repair shop, two stores, a small restaurant, and two tourist cabins. Some distance away, and across the Norfolk and Western Railway tracks, there was erected a few years ago the Monroe Calculating Machine Company's plant. This is a large plant and employs some 500 people.

In order to obtain access to the Monroe plant from the Lee Highway, Margaret V. Shipley donated a right of way 70 feet in width from the Lee highway through her property, block 5, to the railway right of way, and an underpass is being constructed under the tracks. It is contemplated that this right of way and the underpass will become a portion of an outer loop drive which will allow traffic

to circle around the city of Bristol instead of going through the business section.

Block 5 is lowland, lying lower than the highway, and upon it the defendants have begun the construction of a building to be used as a shopping center on the corner of the newly donated land, which will be known as Valley Drive, and the State highway. In this building it is proposed that a super-market, a drug store, a filling station, and other shops will be located, and for its erection the defendants secured a building permit from the city of Bristol.

At the time, however, and before they began the construction, they had full knowledge of the building restrictions in the deeds, and they consulted no attorney as to their rights and duties. The architect, before work was begun, called their attention to the building restrictions, and suggested that they first secure the consent of the property owners to the construction of the building but they did not follow his suggestion. When the temporary injunction was granted the defendants had expended some eight or nine thousand dollars up to that time in labor and materials on the grounds.

The Lee highway, on which the shopping center will border, is a heavily traveled one. It is estimated that 500 cars per hour pass daily. It carries additional routes numbers 11, 58, and 19, which converge at Abingdon and proceed westwardly by the property in question. It is also estimated that one half to two thirds of the employees of the Monroe plant will pass the shopping center daily. The foregoing facts are not in serious dispute.

As already indicated, the trial court granted a temporary injunction restraining the defendants from further work on the building, but after a hearing upon the evidence it dissolved the injunction and dismissed the bill. The court was of the opinion that conditions had so changed in the area as to make it inequitable to enforce the restrictions; that the complainants would not suffer irreparable damage by reason of the defendants' violation of the covenants; that the defendants would be seriously damaged by enforcing the

covenants; that the complainants should be left to their remedy at law for damages, and lastly, that to enforce the covenants would nullify the zoning ordinance of the city of Bristol.

We will discuss the last proposition first. In Virginia there is no case which affords us any direct authority on the question. *Clay* v. *Landreth* (1948), 187 Va. 169, 45 S. E. (2d) 875, 175 A. L. R. 1047, is not in point. Here the restrictive covenants began with the deed of August 27, 1934, and were still in force and effect both when the development became a part of the city of Bristol in 1942, and also when the zoning ordinance was later adopted by the city permitting certain business enterprises in block 5.

In other jurisdictions the courts are in accord, to the effect that a zoning law cannot constitutionally relieve land within the district covered by it from lawful restrictive covenants affecting its use for business purposes. 14 Am. Jur., Covenants, Conditions and Restrictions, section 299; *Strauss* v. *Ginzberg*, 218 Minn. 57, 15 N. W. (2d) 130, 155 A. L. R. 1000; *Magnolia Petroleum Co.* v. *Drauver*, 183 Okla. 579, 83 P. (2d) 840, 119 A. L. R. 1112; *Ludgate* v. *Somerville*, 121 Ore. 643, 256 P. 1043, 54 A. L. R. 837; *Vorenberg* v. *Bunnell*, 257 Mass. 399, 153 N. E. 884, 48 A. L. R. 1431; *Finn* v. *Emmaus Evangelical Lutheran Church*, 329 Ill. App. 343, 68 N. E. (2d) 541, and annotations in 48 A. L. R. 1437, and 54 A. L. R. 843.

█ In *Ludgate* v. *Somerville, supra,* the court said: "The general scheme of maintaining and perpetuating Laurelhurst as a high-class, exclusively residential district certainly promotes the general welfare. The contractual obligations imposed upon all lot owners are not contrary to public policy. An act which so deprives a citizen of his property rights cannot be sustained under the police power unless the public health, comfort or welfare demands such enactment. It cannot well be argued that the purpose to enjoy that which we are pleased to call home and to protect it against the encroachment of commercial interests is inimical to public welfare. \* \* \* "

In the case at bar we do not think that the public health, comfort or welfare demands that the restrictive covenants be superseded by the zoning ordinance.

No contention is made that the restrictions were not reasonable when made. The claim is that they have now become unreasonable and oppressive by reason of recent radical changes in the conditions affecting the area. Restrictions creating exclusive residential areas have long been recognized in Virginia as reasonable and valid. *Whitehurst* v. *Burgess*, 130 Va. 572, 107 S. E. 630, and *Renn* v. *Whitehurst*, 181 Va. 360, 25 S. E. (2d) 276.

In *Deitrick* v. *Leadbetter*, 175 Va. 170, 8 S. E. (2d) 276, 127 A. L. R. 849, we said: "There are no Virginia cases directly in point, but from their examination this much may be safely said: Whenever land is developed under a general scheme, reasonable restrictive covenants which appear in deeds to all lots sold are enforceable alike by the vendor and by the vendees and by their successors in title. *Board of Supervisors* v. *Bedford High School*, 92 Va. 292, 23 S. E. 299; *Spilling* v. *Hutcheson*, 111 Va. 179, 68 S. E. 250; *Elterich* v. *Leicht Real Estate Co.*, 130 Va. 224, 107 S. E. 735, 18 A. L. R. 441; *Whitehurst* v. *Burgess*, 130 Va. 572, 107 S. E. 630; *Stevenson* v. *Spivey*, 132 Va. 115, 110 S. E. 367, 21 A. L. R. 1276; *Cheatham* v. *Taylor*, 148 Va. 26, 138 S. E. 545, and *Clarke* v. *Miller*, 149 Va. 251, 141 S. E. 141."

The question to be determined is whether or not there has been such a radical change in conditions as to defeat the purpose of the restrictions. This question has been the subject of litigation in this court on two recent occasions. *Deitrick* v. *Leadbetter*, *supra*, and *Booker* v. *Old Dominion Land Co.*, 188 Va. 143, 49 S. E. (2d) 314. In the former case we quoted with approval from *Rombauer* v. *Compton Heights Christian Church*, 328 Mo. 1, 40 S. W. (2d) 545, this statement: "No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, but it can be safely asserted the changes must be so radical as practically to destroy the essential objects and purposes of the agreement."

The foregoing statement was incorporated in the opinion of *Booker* v. *Old Dominion Land Co., supra,* and approved. There are numerous cases on the subject. Many of them are collected and discussed in annotations in 54 A. L. R. 812, 85 A. L. R. 985, and 103 A. L. R. 734.

In speaking of the conditions under which equity will compel the observance of the restrictions by those who are bound by them, in *Booker* v. *Old Dominion Land Co., supra,* we said: "It is generally true, however, that where the restrictive covenant is induced by the then existing conditions and surroundings of the land embraced in the subdivision, and the presumption of its continued availability for the covenanted purposes, if a radical change takes place in the whole neighborhood so as to defeat the purpose of the restrictions and render their enforcement inequitable and oppressive, equity will not compel observance of them by injunction, but will leave the complaining party to his remedy at law. *Rombauer* v. *Compton Heights Christian Church, supra; Robinson* v. *Edgell,* 57 W. Va. 157, 49 S. E. 1027; *Ludgate* v. *Somerville,* 121 Ore. 643, 256 P. 1043, 54 A. L. R. 837."

The changes relied upon by the defendants are: (1) That there is now maintained the Eastman Antique House, in which antiques are sold from one of the homes in the development; (2) that candy is made in the basement of one of the homes in the development; (3) that the construction of Valley Drive running to the Monroe plant south of the railroad creates a material change. These three alleged changes are within the development. On the outside of the development there are stores and filling stations which have been erected beyond the western line. Across the railroad tracks to the south of the development the Monroe plant was constructed.

It is also contended that the annexation of the development by the city of Bristol and the zoning ordinance of the city constitute another material change in conditions.

The changes relied upon are not radical but are more or less minor and normal. They do not destroy or even

injure the purposes of the restrictions. The development is still strictly a residential one. No business building has ever been constructed in the area. The changes relied upon which have taken place outside the development are more or less remote. They do not destroy or detract from the development as one strictly for homes. The new driveway is not sufficient to injure it. Perhaps it will bring added traffic on the already burdened Lee highway, but that is no reason to lift the restrictions. In *Booker* v. *Old Dominion Land Co., supra,* we expressly held that, "Because there is more traffic on the street is no sufficient reason for lifting the restrictions to permit more business houses among the residences."

Again, in *Booker* v. *Old Dominion Land Co., supra,* we quoted with approval from *Van Meter* v. *Manion,* 170 Okla. 81, 38 P. (2d) 557, this statement: " ' * * * But the fact that traffic has increased on the streets bounding the restricted area and the fact that a suburban business district has been established adjacent to the district and that other minor changes have occurred, coupled with the fact that plaintiff might profit by the establishment of a business on his property, is not sufficient to show that the original plan or purpose may no longer be accomplished, and does not justify an invasion of the rights of property owners in this district who relied upon the terms of the restrictive covenant when they purchased or built homes within the district.' See *Wineman Realty Co.* v. *Pelavin,* 267 Mich. 594, 255 N. W. 393; *Bickell* v. *Moraio,* 117 Conn. 176, 167 A. 722."

Equity should never permit one to violate wilfully a solemn covenant, voluntarily made, simply because to do so would enrich him, and that is what would happen in this case if the covenants are lifted.

Finally, it is contended that the appellants should be relegated to a court of law for damages, and denied equitable relief by way of injunction.

In *Springer* v. *Gaddy,* 172 Va. 533, 2 S. E. (2d) 355, we held that an owner whose land is subject to restrictions cannot violate them and, when a suit in equity is brought

against him, relieve his property of the restrictions by the payment of damages.

The evidence in this case overwhelmingly discloses that the defendants, Mr. and Mrs. Shipley, deliberately sought to abrogate the restrictions which they themselves had placed upon the land and to extinguish the rights of the appellants in the covenants. With full knowledge of all of the facts, they wilfully committed an invasion of the rights of those who had purchased lots. They now can only blame themselves if they find themselves the losers.

The decree of the trial court is reversed and a decree will here be entered extending and continuing the injunction for twenty years from the 27th day of August, 1934.

*Reversed and final decree.*