## Richmond

### EDMUND WALLER HENING, JR., ET AL.

### V.

### J. GARY MAYNARD, JR., ET AL.

Record No. 810716.

March 9, 1984.

Present: All the Justices

*James C. Roberts (Russell V. Palmore, Jr.; Susan C. Armstrong; Mays, Valentine, Davenport & Moore*, on briefs), for appellants.

*Miles Cary, Jr. (John R. Walk; Hirschler, Fleischer, Weinberg, Cox & Allen*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

The sole issue presented in this appeal is whether certain restrictions contained in a 1945 restrictive covenant agreement (the 1945 Agreement) expired on September 1, 1976, the termination date specified in another agreement executed in 1956 (the 1956 Agreement). After considering all the evidence, the trial court found that the restrictions contained in the 1945 Agreement terminated upon the expiration of the 1956 Agreement.

The restrictive covenants pertained to the Glenbrooke Hills subdivision. The initial owners of lots in Glenbrooke Hills accepted their property subject to restrictions contained in a "1936 Agreement."[1] These restrictions, which applied to all 110 lots in the subdivision, limited the number of structures on each homesite,[2] required approval of building plans, dedicated roads for common use, established an annual maintenance charge, controlled the erection of fences, enumerated various forbidden uses of the property, regulated waste disposal, and prohibited conveyances to non-Caucasians. The restrictions expired September 1, 1956, unless renewed by a majority of the landowners. In the 1956 Agreement, a majority of the landowners extended all the restrictions, except the invalid racial limitation, to September 1, 1976.

In 1945, Wilfred Roper, a common grantor who held 68 lots in the subdivision, entered into an agreement with 14 grantees. The grantees did not constitute a majority of the landowners in Glenbrooke Hills. The 1945 Agreement stated that Roper had acquired the land for the grantees "primarily for the purpose of controlling the development of . . . Glenbrooke Hills in a manner most acceptable to the [property owners] and to that end the parties . . . desire[d] to restrict the number of houses that may be built" on the lots they acquired. The Agreement enumerated the lots to be purchased by each grantee and provided that each group of described lots contained a specified number of homesites.

The Agreement also stated that "all future conveyances . . . shall be subject to the existing restrictions" (the 1936 Agreement)

---

[1] Although there was no actual "1936 Agreement," the parties stipulated to the following:

[A]ll references to the 1936 restrictive covenant agreement should be considered as referring to the fact that each deed of conveyance of lots in Glenbrooke Hills recorded after September 1, 1936 and prior to August 15, 1956 was subject to those restrictions contained in that certain deed from William C. Carr, et ux to Grace C. Roper, dated June 30, 1939 . . . .

[2] A homesite was defined as any lot designated on the subdivision plat, and only one residence was permitted on a homesite.

and that the parties agreed not to make any deeds which do not include "the restrictions as herein set forth." Because the parties to the 1945 Agreement believed that the "maintenance fund" provision of the 1936 Agreement was void due to nonuse, they agreed to waive that provision as to all other parties to the Agreement and also as to the other lot owners in Glenbrooke Hills. The Agreement contained no express expiration date.

The lots affected by the provisions of the 1945 Agreement were conveyed by deeds of even date with the Agreement. The deeds expressly provided that the grantees accepted their properties subject to the restrictions set forth in the Agreement.

In May, 1972, J. Gary and Sally M. Maynard, appellees, purchased Lot 63 and portions of Lots 62 and 64 in Glenbrooke Hills subdivision. Their residence is located on Lot 63. On September 8, 1976, they purchased a portion of Lot 61 and the remainder of Lot 62, which was unimproved property. The 1945 Agreement stated that Lots 62 and 63 constituted one homesite and provided that Lots 64 and 65 together would constitute another homesite.

The Maynards brought suit against the owners of the properties described in the 1945 Agreement (who were either parties to the Agreement or their successors) and Glenbrooke Hills Civic Association, Incorporated. After the court ruled in favor of the Maynards, Edmund Waller Hening, Jr., a defendant-landowner, and the Glenbrooke Hills Civic Association (collectively, Hening) appealed the decision.

Hening contends that the 1945 Agreement stands separate and apart from the two other agreements because, unlike the others, the primary purpose of the 1945 Agreement was "to perpetuate the spacious nature of the neighborhood in which its fourteen signers lived." He also contends that because the Agreement did not expressly provide an expiration date, the parties intended the restrictions to be of indefinite duration.

The Maynards, on the other hand, rely upon the principle that restrictions are not favored; they must be strictly construed, and any doubt or ambiguity is to be resolved in favor of full use of property. They assert that the 1945 Agreement cannot be read and construed as a separate, independent document, but that it, as well as the 1936 and 1956 Agreements, constitute "the overall master restrictive covenants applicable to Glenbrooke Hills subdivision." They contend that the 1945 Agreement amended the existing 1936 restrictions, and the 1956 Agreement implicitly incor-

porated the 1945 restrictions, thereby terminating them on September 1, 1976. Alternatively, the Maynards argue that even if the 1956 Agreement did not terminate the 1945 restrictions, "it would be patently unreasonable to construe the 1945 Agreement as surviving the expiration of the 1956 Agreement." We reject all these contentions.

It is well established that restrictive covenants are not favored and must be strictly construed, and the burden is on the person seeking to enforce the restrictions to prove that they apply to the acts of which he complains. *Mid-State Equipment Co.* v. *Bell*, 217 Va. 133, 140, 225 S.E.2d 877, 884 (1976). Nevertheless, when the intention of the parties is clear and the restrictions are reasonable, equity will enforce them. *Riordan* v. *Hale*, 215 Va. 638, 212 S.E.2d 65 (1975); *Booker* v. *Old Dominion Land Co.*, 188 Va. 143, 49 S.E.2d 314 (1948).

We find no conflict between the 1945 Agreement and the other two, and we view the 1945 Agreement as completely separate and independent. The 1945 Agreement was executed by different parties and only pertains to a portion of the subdivision. More importantly, it dealt with a very limited, specific purpose: the imposition of a greater restriction on the properties of the 14 parties signing the Agreement, regarding the density of development.

The Maynards assert that "[t]he parties to the 1945 Agreement used [it] as a vehicle to amend the then existing restrictive covenants." To support this argument, they point to the fact that the 1945 Agreement purported to eliminate the annual maintenance charge in the 1936 Agreement. We do not construe the 1945 Agreement as being merely amendatory of the existing restrictions. We view it as creating a more restrictive neighborhood within the subdivision. If, however, it purported to amend the existing restrictions, it failed.

In the absence of an agreement to the contrary, existing restrictions cannot be amended or terminated unless *all* parties affected by the restrictions, or their successors, agree to the amendment or termination. *Duvall* v. *Ford Leasing*, 220 Va. 36, 44, 255 S.E.2d 470, 474-75 (1979). The 1936 Agreement made no provision for modification by less than all the parties. The 1945 Agreement was not executed by all parties to the 1936 Agreement, or their successors. Likewise, all of the parties to the 1945 Agreement, or their successors, were not parties to the 1956

Agreement. Clearly, therefore, the 1936 Agreement could not be modified by the 1945 Agreement, and the 1956 Agreement could not terminate the 1945 restrictions.

■ Finally, we consider the Maynards' contention that the 1945 restrictions are unreasonable. Time, alone, is not a sufficient basis for refusing to enforce restrictions; there must be proof of changed conditions which are " 'so radical as practically to destroy the essential objects and purposes of the agreement.' " *Booker*, 188 Va. at 148, 49 S.E.2d at 317 (quoting *Rombauer* v. *Compton Heights Christian Church*, 328 Mo. 1, 18, 40 S.W.2d 545, 553 (1931)).

■ No evidence was presented to establish that the purpose of the 1945 restrictions has ceased to exist or that the restrictions are incapable of fulfilling their intended purpose due to changed conditions. Absent such proof, we must conclude that the purpose of the restrictions is as reasonable and valid today as it was in 1945.

We hold, therefore, that the trial court erred in ruling that the 1945 restrictions terminated upon the expiration of the 1956 restrictions. Accordingly, the judgment of the trial court will be reversed and final judgment entered for the defendants.

*Reversed and final judgment.*