DUDLEY H. MARKS, ET AL.

V.

CARLTON L. WINGFIELD, ET AL.

Record No. 830820

Decided June 14, 1985, at Richmond

Present: All the Justices

*Royston Jester, IV (Jester, Jester and O'Keffee*, on brief), for appellants.

*J. Michael Gamble (Pendleton & Gamble*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

Appellants, Dudley H. Marks and Thurman H. Upchurch (collectively, Marks), sued to enjoin the appellees, Carlton L. Wingfield and others[1] (defendants), from placing campers[2] upon certain subdivision lots owned by the defendants. All lots in the subdivision are subject to the following restrictive covenants:

---

[1] The other appellees are: John T. Fulcher, Raymond T. Gilbert, Grave W. Gilbert, William B. Pleasants, Jean R. Pleasants, David N. Sellick, Sr., David N. Sellick, Jr., Patricia H. Sellick, Elizabeth K. Sellick, Samuel Poindexter, and Linda S. Poindexter.

[2] A camper is "a portable dwelling (as a specially equipped trailer or automotive vehicle) for use during casual travel and camping." *Webster's New Collegiate Dictionary* 158 (1980).

1. No shacks, tents, house trailers or temporary dwellings of any kind whatsoever shall be erected on the property.
2. Lots hereby conveyed shall be used and occupied for residential purposes only, and only one single-family residence shall be constructed on any lot.

In their responsive pleadings, defendants denied that they violated the restrictions, and, alternatively, that, even if they had, they claimed that the restrictions were invalid and unenforceable. The trial court ruled in favor of the defendants on both grounds, and this appeal resulted. Thus, we must determine (1) whether the restrictions are valid and enforceable, and, if so, (2) whether the defendants violated them.

The evidence was taken by depositions, and the material facts are undisputed. The subdivision known as "Riverside" was established in 1958 and consists of 19 residential lots fronting on the James River in Amherst County. Riverside, which always has been primarily a recreational area, contains nine permanent houses.

It was not until the late 1970's that campers were placed in the subdivision. During this period, the defendants brought campers to the subdivision. Previously, all dwellings had been permanent structures which complied with the restrictions. When the present suit was instituted, five campers were located within Riverside. A real estate appraiser opined that placing campers or other temporary structures near a single-family residence adversely affects the value of the residence property.

These campers are mobile and are either towed or driven[3] upon the land. They are titled by the Division of Motor Vehicles. Generally, when in place, the campers are supported by jacks or bricks which are placed under them on the ground. However, such supports, although desirable, are not necessary. The campers are suitable for use as temporary dwellings, and, occasionally, some defendants sleep in them overnight. Electric and natural gas utilities are connected to the campers.

The subdivision was subjected to major flooding by the river in 1969 and 1972. The floods, however, did not cause any substantial damage to the permanent houses. Because of the floods, the

[3] One of the campers is a self-propelled "motor home."

County adopted regulations requiring that future structures be placed at designated elevations.

First, we address the defendants' contention that the restrictions are invalid and unenforceable because, due to flooding, the character of the neighborhood has changed from residential to recreational. They argue that the area is unsuitable for permanent dwellings; therefore, because the intended purpose of the restrictions has ceased to exist, the covenants are no longer reasonable.

Ordinarily, residential restrictions are recognized as reasonable and valid, *Ault* v. *Shipley*, 189 Va. 69, 76, 52 S.E.2d 56, 59 (1949), and will be enforced in equity, *Renn* v. *Whitehurst*, 181 Va. 360, 366, 25 S.E.2d 276, 278-79 (1943). When a party seeks to defeat their enforcement on the ground of changed conditions in the neighborhood, he must prove that conditions in the whole neighborhood have changed so radically as to virtually destroy the essential purposes and objectives of the agreement. *Hening* v. *Maynard*, 227 Va. 113, 118, 313 S.E.2d 379, 382 (1984); *Ault*, 189 Va. at 76-77, 52 S.E.2d at 59; *Booker* v. *Old Dominion Land Co.*, 188 Va. 143, 148, 49 S.E.2d 314, 317 (1948); *Deitrick* v. *Leadbetter*, 175 Va. 170, 177, 8 S.E.2d 276, 279 (1940).

The record discloses only one change of condition in the subdivision since the restrictions were imposed. That change resulted from the County's adoption of an ordinance, as a protection against flood damage, which regulated elevation of structures to be built in the subdivision. However, this did not radically change the residential character of the neighborhood.

While the defendants correctly assert that the subdivision is primarily a recreational area, it was always recreational in nature. It is important to note, however, that in a subdivision containing only 19 lots, nine permanent houses have been built. Clearly, therefore, the area remains residential, as well as recreational, in character.

Finally, the possibility of flooding is no greater now than when the restrictions were imposed. We conclude that the record does not support a finding that there has been such a radical change of conditions in the neighborhood as would make the restrictions unreasonable. Thus, the court erred in this ruling.

Next, we consider whether the defendants violated the covenants. They contend that they did not because the restrictions do not exclude campers.

Restrictive covenants are not favored and must be construed strictly. Moreover, the party who seeks to enforce a restriction has the burden of proving that it proscribes the acts of which he complains. *Hening*, 227 Va. at 117, 313 S.E.2d at 381. Nevertheless, equity will enforce restrictions when they are reasonable and the intention of the parties is clear. *Id.*

We believe it is clear from a reading of both restrictions that the developer and his immediate grantees intended to exclude all types of temporary residences in the subdivision. Indeed, one restriction expressly prohibits "temporary dwellings of any kind whatsoever." Because campers are used as temporary residences, they fall within the prohibition. The mere fact that they have been used sparingly as living quarters is of little significance. More significantly, the campers are susceptible to residential use and, at times, have been so used.

In finding that the restrictions had not been violated, the trial court focused upon the word "erected" and concluded that the campers "are not erected or constructed on the lots," but are "easily movable." The same argument could be applied with equal force, however, to "house trailers" which are expressly prohibited by restriction Number One. We conclude that when the restrictions are read together, such a construction defeats the obvious purpose and objective contemplated by the parties, *i.e.*, to create a residential subdivision containing permanent, single-family dwellings.

We hold, therefore, that because the restrictions are reasonable and enforceable, and prohibit campers on the subdivision lots, the court erred in denying the injunction. Thus, we will reverse the decree of the trial court and remand the cause with directions that an injunction be entered consistent with the views expressed herein.

*Reversed and remanded.*