## CIRCUIT COURT OF CHESTERFIELD COUNTY

A. Dale Smith
and Richard M. Allen

v̇.

Chesterfield Meadows
Shopping Center
Associates, L.P., et al.

September 14, 2000

Case No. CH98-740

BY JUDGE WILLIAM R. SHELTON

On August 29, 2000, the parties appeared by counsel before this Court on the plaintiffs' Motion to Substitute Party Plaintiff and Motion to Amend the Bill of Complaint, and the defendants' Motion for a Protective Order. The Court took all three matters under advisement. After reviewing the case file, the Code of Virginia, the applicable case law, and counsels' memoranda, the Court rules as follows.

*Facts*

On June 24, 1998, A. Dale Smith and Richard M. Allen filed a Bill of Complaint against Chesterfield Meadows Shopping Center Associates, L.P., Ukrop's Supermarkets, Inc., and Taco Bell Corporation asking the Court to declare a restrictive covenant, held by the defendants, null and void on the basis of changed circumstances.

In March of 1980, Centralia Associates conveyed 5.5 acres to Richard M. Allen. On April 17, 1980, Richard Allen entered into an agreement with

Ernest P. Gates and Virginia Y. Gates regarding the 5.5 acres. The agreement set forth a restrictive covenant allowing for only:

> the purposes mentioned and allowed by the Special Conditional Use Permit granted by the Board of Supervisors on November 28, 1979, in Case No. 79S101A for an office complex as reflected in the official minutes of the meeting. The property shall be developed only and the use of the land permitted thereon as required by the zoning and use permit granted by such Board of Supervisors on November 28, 1979, and no other use of the property shall be made except in substantial compliance therewith.

Bill of Complaint, p. 5 (Attach. Agreement) (filed 6/24/1998).

In July of the same year, Mr. Allen conveyed 3.5 acres of the 5.5 acre parcel to Chesterfield Courthouse, Inc. (CCI). Mr. Allen then reconveyed 2.023 acres of the original parcel back to Centralia Associates in December 1980. In January 1981, Centralia Associates conveyed the 2.023 acres to A. Dale Smith. Meanwhile, the Gateses sold their property to Pioneer Financial and Pioneer Financial subsequently sold the property to Chesterfield Meadows.

### Motion to Substitute Party Plaintiff

Mr. Smith and Mr. Allen seek to substitute Chesterfield Courthouse, Inc., for Richard Allen as a party plaintiff because CCI is the current owner of the 2.023 acres, not Richard Allen.

Rule 3:14 of the Supreme Court of Virginia states that "[n]ew parties may be added, by leave of court, on motion of the plaintiff by order of the court at any stage of the case as the ends of justice may require." However, this power is not unlimited. The Virginia Supreme Court in *Chesapeake House on the Bay, Inc. v. Virginia National Bank*, 231 Va. 440 (1986), states that "a new plaintiff may not be substituted for an original plaintiff who lacked standing to bring the suit . . . and the sole remedy is a nonsuit followed by a new action brought in the name of a proper plaintiff." 231 Va. 440, 442-43, 344 S.E.2d 913, 915 (1986).

The restrictive covenant allegedly binds the original 5.5 acre parcel held by Mr. Allen on the date of the agreement. Mr. Allen split the 5.5 acres in July 1980, after the agreement between Allen and Gates. Allen sold three and a half acres to CCI, and the remaining 2.023 acres were eventually sold to Smith by way of Centralia Associates. The Bill of Complaint filed in June 1998

listed the two plaintiffs as A. Dale Smith and Richard M. Allen. *See* Bill of Complaint (filed 6/24/1998). However, the owners of the two separate plots at the time of filing were CCI and Smith. After December 1980, Mr. Allen no longer had an interest in any part of the 5.5 acres. When Mr. Allen split the property, the new owners, Smith and CCI, became separate and original plaintiffs to bring an action in Chancery. According to *Chesapeake House on the Bay, Inc. v. Virginia National Bank*, this Court may not substitute CCI for Mr. Allen since Mr. Allen is an original plaintiff who lacked standing to bring the case. *See* 231 Va. at 442-43, 344 S.E.2d at 915. This Court therefore denies plaintiffs' Motion to Substitute Party Plaintiff.

### Motion to Amend the Bill of Complaint

The plaintiffs seek leave to amend the Bill of Complaint. The Amended Bill of Complaint expands and clarifies the argument that the restrictive covenant is void due to changed circumstances. It also adds a second count claiming the restrictive covenant lacked horizontal privity, the restrictions in the agreement were personal, and the restrictive covenant bound only the original parties to the agreement.

Virginia Supreme Court Rule 1:8 grants liberal leave to amend pleadings to further the ends of justice. The granting of leave is within the sound discretion of the court; however, the court does look at several factors: (1) whether leave to amend has already been granted, (2) whether leave would prejudice the defendant, (3) the length of the case and the timing of the motion in relation thereof, (4) how near is the trial, (5) the plaintiff's need to amend, and (6) the content of the newly amended pleading. *Mortarino v. Consultant Eng'g Services, Inc.*, 251 Va. 289, 296, 467 S.E.2d 778, 782 (1996) (looking to see if defendant prejudiced or if previously amended); *see Kole v. City of Chesapeake*, 247 Va. 51, 57, 439 S.E.2d, 405, 409 (1994) (holding that leave is in the discretion of the court and looking to see if defendant prejudiced by amending); *Neff v. Garrard*, 216 Va. 496, 498, 219 S.E.2d 878, 879-80 (1975) (looking to the content of the amendment); *Horsley v. Life Ins. Co. of Va.*, 15 Va. Cir. 394 (Henrico 1989) (looking to nearness of trial, completeness of discovery, excuse for delay, the length of the case, and timing of motion). The general rule is that "[a]mendments will not be allowed . . . when they raise a new substantive cause of action which is different from that which the plaintiff asserted when he or she first filed the action." *Vines v. Branch*, 244 Va. 185, 188, 418 S.E.2d 890, 892 (1992). The test to determine whether a new cause of action is alleged is to "inquire if a recovery had upon the original complaint would be a bar to any recovery under the amended

complaint, or if the same evidence would support both, or if the same measure of damages is applicable." *Id.* at 189, 418 S.E.2d at 893 (quoting *Irvine v. Barrett,* 119 Va. 587, 591, 89 S.E.2d 904, 905 (1916)).

Considering the various factors and the nature of the Amended Bill of Complaint, the Court must analyze the two counts separately. The first Count sets out the language of the restrictive covenant and the Board of Supervisors' Special Conditional Use Permit in greater detail. The Count also explains the intent of the restrictions and describes the changes in the area surrounding the property in question. This Count will not prejudice the defendant, and, considering the vagueness of the original Bill of Complaint, the amendments will clarify and solidify the issues present. While leave to amend was granted in October 1998, this was before the Supreme Court found the Bill of Complaint was sufficiently pleaded. The Supreme Court's subsequent ruling which allowed the case to go forward makes any prior leave to amend or timing of the motion run from the date of the Supreme Court's opinion. This matter has not yet been set for trial, and discovery is not complete. Hence, the Court grants the plaintiff's leave to amend the Bill of Complaint as to Count One.

The Bill of Complaint's second Count contends that the agreement containing the restrictive covenant was not a part of the land transaction from Allen to CCI and Smith. Plaintiffs argue that the restrictions were personal, no horizontal privity existed between the Gateses and Allen, and the restrictions only bound the original parties. This Count alleges a new cause of action under *Vines v. Branch,* as the evidence in the original Bill of Complaint will not support Count Two. *See* 244 Va. at 189. Additionally, the Court finds that leave to amend may prejudice the defendants' defense of laches. Hence, the Court denies plaintiffs' Motion to Amend the Bill of Complaint as to Count Two.

*Motion for a Protective Order*

The defendants seek a protective order from revealing to plaintiffs and plaintiffs' using information regarding circumstances of defendants' discovery of the covenant at trial. The defendants claim that such information is irrelevant and immaterial to "changed circumstances" pleaded.

Virginia Supreme Court Rule 4:1(c) allows a court to limit the scope of discovery upon good cause shown. However Rule 4:1(b) allows discovery for:

> any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . . It is not ground[s] for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Va. Sup. Ct. R. 4:1(b).

The test to determine changed circumstances is whether conditions have changed "so radically as to virtually destroy the essential purposes and objectives of the agreement." *Marks v. Wingfield*, 229 Va. 573, 576, 331 S.E.2d 463, 465 (1985). However, this is not a hard or fast rule. *Ault v. Shipley*, 189 Va. 69, 76, 52 S.E.2d 56, 59 (1949).

While this Court does not see a direct connection between the knowledge of when and how the defendants first became aware of the covenant and the changed circumstances test, the Court reasons that such information may lead to relevant or admissible evidence. Thus, the defendants' Protective Order is denied.