Present:  All the Justices

ADRIENNE A. BARRIS, ET AL.
                                        OPINION BY
v.  Record No. 031915          JUSTICE LAWRENCE L. KOONTZ, JR.
                                       June 10, 2004
KESWICK HOMES, L.L.C.

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        David T. Stitt, Judge


     In this appeal, we consider whether the circuit court

correctly ruled that a particular lot in a residential

subdivision is no longer subject to a restrictive covenant

prohibiting the resubdivision of lots in that subdivision.

                            BACKGROUND

     By a recorded deed of dedication and plat dated December

14, 1948, Manning Gasch and Hilda L. Gasch subdivided a tract of

land in Fairfax County to create the Prospect Hill residential

subdivision.  Prospect Hill contained 17 lots, the majority of

which consisted of more than five acres.  The deed of dedication

imposed various restrictive covenants, expressly "running with

the land," on all the lots.  Relevant to this appeal,

restrictive covenant No. 3 (the restrictive covenant) provided

"[t]hat there shall be no resubdivision of any of said lots,

without the written consent of three-fourths of the then owners

of lots in said subdivision."

     Between 1948 and 1984, the original lots in Prospect Hill

were sold to various owners.  During that period, homes were

constructed on some lots and other lots remained undeveloped. In 1984, the owners of various lots including Lot 7, constituting just over three-fourths of the then lot owners, entered into a series of agreements to permit the resubdivision of their lots.  These agreements were set out in a number of instruments, subsequently recorded in the land records of Fairfax County.  One of those instruments, dated July 25, 1984, quoted verbatim the language of the restrictive covenant and expressed the lot owners' agreement to "vacate and release" the restrictive covenant with respect to Lot 7 and that Lot 7 "shall not be subject to said restriction."  This instrument further required "that there be no resubdivision of less than two acres per lot."[1]

The record does not disclose the date or manner in which the lots purportedly released from the restrictive covenant were resubdivided.  However, a recent tax map of Prospect Hill, attached as an exhibit to a pleading, shows that each lot covered by the 1984 instruments has been resubdivided.  Lot 7A, which is the property at issue in this appeal, was created when Lot 7 was resubdivided in accord with the July 25, 1984

---

[1] Each of the 1984 instruments was individually denoted as a "release of covenant."  For clarity, we will hereafter refer to the instrument pertaining to Lot 7 as the "July 25, 1984 instrument."

instrument.  The remaining part of Lot 7 was combined with a part of original Lot 8.  Lot 7A appears to consist of approximately 5 acres.

In a bill of complaint filed in the Circuit Court of Fairfax County on November 8, 2002, Adrienne A. Barris, Peter J. Barris, Joyce C. Gibson, Steven H. Gibson, Holly Rudkin, and Robert E. Vagley, current owners of lots in Prospect Hill (collectively, Barris),[2] alleged that Keswick Homes, L.L.C. (Keswick Homes), the current owner of Lot 7A, was seeking "county approval for re-subdivision of Lot 7A without the consent required by the [r]estrictive [c]ovenant."  Asserting that they had the right to enforce the restrictive covenant against Lot 7A, Barris sought an injunction against Keswick Homes to prohibit it from resubdividing Lot 7A without first obtaining permission from three-fourths of Prospect Hill's current lot owners.[3]

On December 13, 2002, Keswick Homes filed an answer to the bill of complaint, asserting on various grounds that Lot 7A was

--------

[2] Cornwell G. Appleby and Nancy O. Appleby, current owners of lot 8B, also joined in the bill of complaint.  The Applebys are not parties to this appeal.

[3] In the alternative, Barris asserted a claim for injunctive relief based on an implied reciprocal negative easement and equitable servitudes.  Because the chancellor did not expressly rule on this issue, this appeal is limited to the current enforceability of the restrictive covenant against Lot 7A.

not subject to the restrictive covenant. Thereafter, Keswick Homes filed a motion for summary judgment and supporting brief asserting that the July 25, 1984 instrument released original Lot 7 from the restrictive covenant and because Lot 7A is a part of that lot, the July 25, 1984 instrument also released Lot 7A. Keswick Homes asserted in the alternative that the doctrine of estoppel by deed barred Barris from denying the effectiveness of the July 25, 1984 instrument as a release of the restrictive covenant because each of the Barris' predecessors in title had executed that instrument. In a responding brief, Barris contested Keswick Homes' assertions.

On May 16, 2003, the chancellor conducted a hearing on Keswick Homes' motion for summary judgment. The chancellor ruled in open court that the July 25, 1984 instrument released Lot 7 from the restrictive covenant as permitted by the terms of the deed of dedication and the effect of that release applied to Lot 7A. The chancellor further ruled that the complainants were estopped from challenging the resubdivision of Lot 7A so long as lots of less than 2 acres are not created by the resubdivision of that lot. An order granting summary judgment to Keswick Homes on these grounds was entered at the conclusion of the hearing. We awarded Barris this appeal.

DISCUSSION

4

The chancellor's judgment was based solely upon his interpretation of the restrictive covenant in the 1948 deed of dedication of the Prospect Hill subdivision and the July 25, 1984 instrument purporting to release Lot 7 from that covenant. We will review the chancellor's interpretation of that covenant and written agreement de novo. Perel v. Brannan, 267 Va. 691, 698, 594 S.E.2d 899, 903 (2004); see also Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984).

It is a well established principle that restrictive covenants on land are not favored and must be strictly construed. Anderson v. Lake Arrowhead Civic Association, 253 Va. 264, 269, 483 S.E.2d 209, 212 (1997). "Substantial doubt or ambiguity is to be resolved against the restrictions and in favor of the free use of property." Id. at 269-70, 483 S.E.2d at 212. However, when the terms of a restrictive covenant "are clear and unambiguous, the language used will be taken in its ordinary signification, and the plain meaning will be ascribed to it." Marriott Corp. v. Combined Properties, L.P., 239 Va. 506, 512, 391 S.E.2d 313, 316 (1990); see also Foods First, Inc. v. Gables Associates, 244 Va. 180, 182, 418 S.E.2d 888, 889 (1992). Generally, a restrictive covenant cannot be modified or terminated except by agreement of all the parties entitled to enforce the covenant. However, the covenant may provide for a mechanism by which the parties, or some number of them, may

modify or terminate the restriction.  Hening v. Maynard, 227 Va. 113, 117, 313 S.E.2d 379, 382 (1984); see Minner v. City of Lynchburg, 204 Va. 180, 188-90, 129 S.E.2d 673, 679-80 (1963)(applying same standard to implied restrictive covenant). These principles guide our initial considerations in the present case.

Keswick Homes essentially contends that the language of the restrictive covenant at issue here permits three-fourths of the lot owners to modify the covenant by exempting a particular lot from the restriction against resubdivision in perpetuity, subject to any terms the subscribing lot owners may require. Barris asserts that the proper construction of the covenant would permit a lot owner to make a one-time resubdivision of a lot by obtaining the consent of three-fourths of the lot owners at the time of the resubdivision.  We agree with Barris.

The language of the restrictive covenant is clear and unambiguous.  It expressly provides that no lot within Prospect Hill may be resubdivided "without the written consent of three-fourths of the then owners of lots in said subdivision." (Emphasis added).  The plain meaning of these words is that before any resubdivision of a lot is permissible, consent must be obtained from at least three-fourths of the other owners of lots at the time the resubdivision is sought.  The express language of the restrictive covenant excludes an interpretation

6

that the covenant permits three-fourths of the lot owners to grant a perpetual release of a lot from the restriction on resubdivision.

Since the restrictive covenant does not grant three-fourths of the then lot owners the authority to grant a perpetual release of a lot from the covenant, the chancellor erred in interpreting the July 25, 1984 instrument purporting to release Lot 7 from the covenant as having that effect. Rather, because this instrument recites the language of the restrictive covenant, it must be interpreted as reflecting the intent of the parties to give consent consistent with the provisions regarding consent contained in the covenant. That interpretation is not altered simply by the fact that the July 25, 1984 instrument was inartfully styled as a "release of covenant" and contained the language that Lot 7 "shall not be subject to . . . said restriction" so as to give the impression that a perpetual release from the covenant was intended. Accordingly, it follows that Lot 7A, which resulted from the previous resubdivision of the original Lot 7, remains subject to the restrictive covenant.

Because the restrictive covenant expressly runs with the land pursuant to the provisions of the 1948 deed of dedication of the Prospect Hill subdivision, the resubdivision of Lot 7A is prohibited without the consent of three-fourths of the current lot owners. It is self-evident that the permitted

resubdivisions of various lots in Prospect Hill since 1984 have resulted in an increase in the number of lot owners and, consequently, a proportionate increase in the number of lot owners whose consent will be required for a resubdivision of Lot 7A. The tax map in the record shows that Prospect Hill now contains no fewer than 27 lots, with the result that consent of at least 21 lot owners is required before Lot 7A may be resubdivided.

Keswick Homes contends, however, that even if the July 25, 1984 instrument did not effectively release Lot 7A from the restrictive covenant so as to permit its further resubdivision, the lot owners who subscribed to that instrument nonetheless surrendered their rights, and consequently the rights of their successors in interest, to enforce the covenant against Lot 7A under the doctrine of estoppel by deed. The thrust of Keswick Homes' contention is that whether the parties to the July 25, 1984 instrument had the authority or intent to release Lot 7 from the covenant in perpetuity, that is the effect of the language of the instruments. Therefore, those parties and their successors in interest may not now deny that effect. We disagree.

In general, the doctrine of estoppel by deed provides that equity will not permit a grantor, or one in privity with him, to assert anything in derogation of an instrument concerning an

interest in real or personal property as against the grantee or his successors. See Virginia Electric & Power Co. v. Buchwalter, 228 Va. 684, 688, 325 S.E.2d 95, 97 (1985); School Board of Sand Lick District v. Smith, 134 Va. 98, 104, 113 S.E. 868, 869 (1922). However, as has been demonstrated, the clear intent of the parties to the July 25, 1984 instrument was to give effect to the authority granted by the restrictive covenant to consent to a one-time resubdivision of Lot 7 and that resubdivision has occurred.

Thus, enforcement of the restrictive covenant against a lot created by the one-time resubdivision of Lot 7 would not be in derogation of the July 25, 1984 instrument. Accordingly, we hold that the chancellor erred in ruling that the complainants were estopped from enforcing the restrictive covenant against Lot 7A.

CONCLUSION

For these reasons, we hold that the chancellor erred in granting summary judgment to Keswick Homes. We will reverse that judgment and remand the case for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

9