# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Gordon Properties, L.L.C.

v.

First Owners' Association
of Forty-Six Hundred
Condominium, Inc., et al.

## Case No. (Civil) CL08001432

BY JUDGE LISA B. KEMLER

### June 20, 2008

On June 11, 2008, this Court sustained the demurrer of defendants First Owners' Association of Forty-Six Hundred Condominium, Inc. ("FOA") and the Board of Directors of FOA ("the Board") as to Count I of the Verified Complaint with leave to amend to state a breach of contract claim. The demurrer was overruled as to Counts IV and V. The Court also sustained the demurrer of the individual Board member defendants as to Count I with leave to amend, with the exception that leave to amend was not granted with respect to a claim under Virginia Code § 55-79.53 other than claims of non-compliance against the individual defendants as unit owners, not Board members. With regard to the demurrers of the individual defendants to the other counts (II through VI), the Court did not rule and the parties are in agreement that the Court should decide the demurrer to those counts based upon the pleadings previously submitted.

*Count II*

In Count II, the plaintiff alleges that the FOA, by and through the Board, lacks the authority to take the actions challenged in this lawsuit. The Bylaws provide that a member of the FOA may sue an individual Board member only for "willful misconduct and bad faith." The allegations in the Verified Complaint do not allege a single act by an individual Board member, but rather, are directed towards the actions of the entity that is the Board. The plaintiff argues that, while it does not seek to hold the individual defendants liable, the Nonstock Corporation Act permits the individuals to be named as defendants. However, pursuant to Virginia Code § 13.1-870, a director of a nonstock corporation shall discharge his duties as a director in accordance with his good faith business judgment of the best interest of the corporation. Thus, a director is not liable for any action taken as a director, or any failure to take such action, if he performed the duties of his office in compliance with § 13.1-870. *See* Virginia Code § 13.1-870(C). A director is subject to suit, limited by § 13.1-870.2(B), if he fails to comply with § 13.1-870, and the limitation contained in § 13.1-870.2(B) does not apply if the director acts willfully or criminally. The Verified Complaint contains no allegations that the individual defendants acted in derogation of his or her duties. For these reasons, the demurrer of the individual defendants to Count II is sustained with leave to amend if the plaintiff so chooses within fourteen days hereof.

*Count III*

The plaintiff seeks a constructive trust and to have the FOA, by and through the Board, provide an accounting. Although Count III alleges that the "defendants" have intentionally and recklessly commingled the reserve funds, there are no specific allegations relating to the individual defendants. The Court is not aware of any authority that suggests that the relief sought in Count III cannot be had against an entity such as a corporate Board. The demurrer of the individual defendants to Count III is sustained.

*Count IV*

In this Count, the plaintiff alleges that the FOA has been unjustly enriched by the plaintiff's payment of fees and rent improperly assessed and the plaintiff seeks restitution in the amount of $4,300. The Verified Complaint does not allege that any individual defendant has been unjustly enriched. For these reasons, the demurrer of the individual defendants is sustained.

## Count V

Count V seeks a judicial decree dissolving the FOA. Not only does the plaintiff not seek relief against the individual defendants but Virginia Code § 13.1-909(D) specifically provides: "It is not necessary to make directors or members parties to a proceeding to be brought under this section unless relief is sought against them individually." The demurrer of the individual defendants is, therefore, sustained.

## Count VI

In Count VI plaintiff seeks the entry of declaratory judgment "which finds that it has paid all proper assessments charged to it and that it is entitled to all of its rights as an owner and member of the FOA." There being no allegation specific to any conduct on the part of the individual board members, their demurrer to this count is sustained.

### January 29, 2009

At the conclusion of the January 14th hearing on the parties' motions for partial summary judgment, the Court took up the matter of the order of trial and whether certain matters would be submitted to the jury for factual determinations. Specifically, the Court ruled that, as to Count II and Count V, the jury would be asked to decide whether the individual directors acted willfully or acted in good or bad faith. Since the hearing, I have had an opportunity to review the transcript of the hearing on December 29, 2009, concerning the motion for a protective order. In view of the arguments presented on the motion, I have concluded that my ruling on January 14th was, in part, in error. As to Count II, whether the directors acted in good faith or bad faith in applying the condominium instruments is irrelevant and, therefore, there is no need for the jury to make a factual finding as to the good or bad faith of the directors. As to Count V, the plaintiff is seeking judicial dissolution of the association and alleges that the directors "have acted, are acting, and will act in a manner that is illegal, oppressive, and fraudulent." On this issue, the jury would need to make a factual finding as to the conduct of the directors.

### February 3, 2009

Before the Court is the Motion of Defendants Gilliam, Brungart, Moore, Pepper, and Figueroa to Quash Subpoenas. Having considered the arguments of counsel, the Court denies the motion, but directs Mr. Scully to

designate a specific morning or afternoon during the Plaintiff's case-in-chief when the aforesaid Defendants will be called. In denying the motion, the Court is not ruling that the testimony of these Defendants is relevant or admissible.

February 23, 2009

Before the Court is Gordon Properties, L.L.C.'s ("Gordon Properties") request, as set forth in Count I of the First Amended Complaint, for a permanent injunction requiring the First Owners' Association of Forty Six Hundred Condominium (the "FOA") and the Board of Directors of the FOA (the "Board") "to perform their obligations under the Condominium Declaration and By-Laws of the FOA and specifically prohibiting the FOA and the Board from (i) assessing Gordon Properties based upon Assessment values calculated using . . . any method other than the method set forth in the Condominium instruments, (ii) using reserve funds appurtenant to Gordon Properties' Units for replacement of General or Limited Common Elements other than those to which Gordon Properties' Units are appurtenant; (iii) charging Gordon Properties a rental fee for the Residential/Commercial Limited Common Elements (single-user) that it owns; (iv) collecting maintenance Assessments from Gordon Properties as owner of a Street-Front Commercial Unit; and (v) requiring the FOA to reimburse Gordon Properties for all improper and unauthorized assessments paid by it." (First Amended Complaint at pp. 20-21, paragraphs (a)(i)-(v).)

Regarding subparagraph (iv) above, in an Order dated January 30, 2009, the Court granted the FOA's Motion for Partial Summary Judgment and construed the Declaration and By-laws, together with Virginia Code Ann. § 55-79.83(D), as granting the FOA the authority to assess the Street-Front Commercial Unit owned by Gordon Properties for common expenses relating to the operation and management of the FOA as described in Article VIII of the By-Laws and that the Street-Front Commercial unit owned by Gordon Properties is responsible for 11.32% of those expenses, and, therefore, dismissed with prejudice Gordon Properties' claim in subparagraph (iv) for an injunction against collecting maintenance Assessments from Gordon Properties as owner of a Street-Front Commercial unit.

Regarding subparagraph (v), at trial, the Court granted Defendants' motion to strike, finding that Gordon Properties had failed prove damages.

Having heard the evidence presented at trial, reviewed the pertinent portions of the Condominium Declaration, the By-Laws of the FOA, and the Condominium Act (Virginia Code Ann. §§ 55-79.39 through 55-79.103), and considered the arguments of counsel, the Court makes the following findings.

I. *Construction and Interpretation of the Declaration and By-Laws*

A. *Declaration*

4600 Condominium is a mixed-use condominium consisting of three types of condominium units: "Residential Units," Commercial Units," and "Street-Front Commercial Units." The "Residential Units" are units located on the fifth through sixteenth floors of the building. See Declaration at Deed Book 811, p. 318. The "Commercial Units" are units located on either the third or fourth floors of the building, and the "Street-Front Commercial Units" are those units fronting on Duke Street. See Declaration at Deed Book 811, pp. 317-18.

The Declaration identifies six categories of Common Elements divided into two types of single-user Limited Common Elements, three types of multiple-user Limited Common Elements, and General Common Elements. They are identified in the Declaration as follows: (i) Parking Garage Limited Common Element (single user) (Declaration. Section III(A)(1)), Storage Area Limited Common Element (single user) (Declaration, Section III(A)(2)), Residential Limited Common Element (multiple user) (Declaration, Section III(B)(1)), Commercial Limited Common Element (multiple user) (Declaration. Section III(B)(2)), Residential/Commercial Limited Common Element (multiple user) (Declaration, Section III(B)(3)), and General Common Elements. See Declaration, Section IV.

In identifying the six categories of Common Elements, the Declaration expressly defines what constitutes each category and provides that the owners of Condominium Units assigned parking spaces or storage areas shall share in the cost of maintenance and operation of said limited common elements "as set forth in Section V of [the] Declaration."

Regarding Residential Limited Common Elements (multiple users), Section III(B)(1) of the Declaration identifies those Limited Common Elements that the owners of Residential Units have the exclusive use of, including, but not limited to, the "elevators, elevator shafts, and all equipment comprising the operation of the elevators, not including the freight elevator." In addition, all such Limited Common Elements described in Section III(B)(1) of the Declaration are "deemed appurtenant to the

Residential Units." Finally, Residential Unit owners to which such Limited Common Elements are appurtenant bear the responsibility under Section V of the Declaration for the costs of maintenance and operation of the Limited Common Elements based on the allocations set forth in Table C of Exhibit D to the Declaration.

Regarding the Commercial Limited Common Elements, the passenger elevators are not included within the description of Commercial Limited Common Elements. See Declaration, Section III(B)(2). The Defendants argued that the passenger elevators are "Residential/Commercial Limited Common Elements" based on the "General Notes" on each of the plats included in Exhibit B to the Declaration. The "General Notes," contrary to Section III(B)(1) of the Declaration, state that the "stairwells and passenger elevators are R/C through the fourth floor and R from the fifth through sixteenth floors. . . ." The "R/C" stands for Residential/Commercial and the "R" stands for Residential. The Court rejected this argument finding that the detailed description of "Residential Limited Common Elements" in Section III(B)(1) is controlling. The Commercial Unit owners bear the responsibility under Section V of the Declaration for the costs of maintenance and operation of the described Commercial Limited Common Elements based on the allocations set forth in Table D of Exhibit D to the Declaration.

The freight elevator is specifically identified within the description of Residential/Commercial Limited Common Elements. See Declaration, Section III(B)(3). The Residential/Commercial Unit owners bear the responsibility under Section V of the Declaration for the costs of maintenance and operation of the described Residential/Commercial Limited Common Elements based on the allocations set forth in Table B of Exhibit D to the Declaration.

The General Common Elements consist of all other portions of the Condominium Project that are not a limited common element as described in Sections III(A)(1) and (2) or Sections III(B)(1) through (3) of the Declaration and are not Condominium Units. Section IV of the Declaration provides that the all Condominium Unit owners bear the responsibility for the costs of maintenance and operation of the General Common Elements as set forth in Table A of Exhibit D to the Declaration.

Section V of the Declaration contains the obligations of the owners of Limited Common Elements.

With respect to ownership interest, Section V(A) of the Declaration provides that each Condominium Unit owner "shall own an undivided interest in the Limited Common Elements in the same proportion that the square foot area of the Unit bears to the total square foot area of all units.

Section V(B) of the Declaration lays out a specific methodology for establishing assessments for the cost of maintenance and operation of the Limited Common Elements, including "a reserve for their replacement, renovations, [and] restoration" in that it specifically provides that those costs "shall be borne among the Unit owners having Limited Common Elements appurtenant to their Units *in proportion to the percentage assigned to each Unit by Exhibit D and as set forth below*" (emphasis added). Thereafter, in Sections V(B)(1) and (B)(2), the Declaration provides that Unit owners whose Units are assigned single user and/or multiple user Limited Common Elements shall share in the cost and maintenance of the Limited Common Element, including a reserve for replacement, in accordance with the percentages set forth in Exhibit D to the Declaration.

As to paragraph (B)(1) of Section V of the Declaration, it provides that "[a] unit owner whose Unit has assigned to it a Limited Common Element (single user) shall share in the expense and maintenance of the Limited Common Element of which his assigned space is a part including a reserve for *a replacement thereof in accordance with the percentage set forth in Exhibit D.*" However, there is nothing in Exhibit D that addresses Limited Common Elements (single user). Therefore, Virginia Code Ann. § 55-79.83(A) applies to determine the Unit owner's liability for the expenses relating to such Limited Common Elements (single users) assigned to the owner's Unit. Section 55-79.83(A) provides, in pertinent part:

> Except to the extent that the condominium instruments provide otherwise, any common expense associated with the maintenance, repair, renovation, restoration, or replacement of any limited common element shall be specially assessed against the condominium unit to which that limited common element was assigned at the time such expenses were made or incurred.

### B. *By-Laws*

Article V, Section 3, of the By-Laws sets forth the powers and duties of the Board. Among the duties is the duty to establish and collect Assessments and to establish a general operating reserve and/or reserve for replacement or depreciation of Common Elements and to provide for the collection of such amounts.

Article IX of the By-Laws provides for the establishment of Assessments, as well as the establishment and maintenance of a reserve fund. The Board is required to determine the amount of Assessments at least

annually and the Assessments are required to be based on the percentages of responsibility as set out in Exhibit D to the Declaration. See By-Laws, Article IX, Section 1.

With respect to the reserve fund, under Article IX, Section 3, of the By-Laws, the Board must designate what portion of the reserve fund relates to the General or Limited Common Elements as set out in Section III of the Declaration and can only draw from the Assessments on the Units to which a particular Common Element is appurtenant. The By-Laws further provide that "the amounts required to be allocated to the reserve for replacements shall be considered an appurtenance of the Unit from which the Assessment was drawn and shall not be separately withdrawn, assigned, or transferred, or otherwise separated from the Unit to which it appertains. . . ." See By-Laws, Article IX, Section 3.

### III. *Application of Declaration and By-Laws*

In light of the aforesaid construction of the Declaration and By-Laws, the Court makes the following additional findings.

In preparing the proposed and approved annual budget, the By-Laws require, pursuant to Article IX, Section 3, that the Board designate the portion of the total amount required to fund replacement reserves that is applicable to each of the six categories of Common Elements as identified in Sections III and IV of the Declaration.

The By-Laws require that the Board specifically designate separate reserve assessments for each of the six categories of Common Elements and assess the amounts designated as applicable to each of the six categories of Common Elements only against the Unit or Units to which the particular Common Element is appurtenant. Thus, the reserve assessment of a Parking Garage Limited Common Element (single user) or a Storage Area Limited Common Element (single user) is assessed 100% against the Condominium Unit to which that Limited Common Element (single user) is appurtenant. The reserve Assessment for Residential, Commercial, or Residential/Commercial Limited Common Elements (multiple users) is assessed by multiplying the total amount for that category by the applicable percentage of responsibility for that Limited Common Element (multiple user) for each Unit as listed in the tables in Exhibit D to the Declaration. The reserve assessment for the General Common Elements is assessed against the Condominium Units in proportion to the number of votes in the FOA appertaining to each such Unit.

Pursuant to Article IX, Section 3, of the By-Laws, any amounts specifically designated as separate reserve assessments (as set forth in paragraph B(2) above), can only be used to pay the costs of repairing, replacing, or restoring the Common Elements comprising the category to which those amounts were designated.

The Declaration and By-Laws require the Board to determine separate maintenance and operating expenses to maintain, repair, and operate each of the six categories of Common Elements and to establish Assessments for such expenses only against the Unit or Units to which the particular Common Element is appurtenant. Thus, the maintenance and operating assessment for a Parking Garage Limited Common Element (single user) or a Storage Area Limited Common Element (single user) is assessed 100% against the Condominium Unit to which that Limited Common Element (single user) is appurtenant. The maintenance and operating assessment for Residential, Commercial, or Residential/Commercial Limited Common Elements (multiple users) is assessed by multiplying the total amount for that category by the applicable percentage of responsibility for that Limited Common Element (multiple user) for each Unit as listed in the tables in Exhibit D to the Declaration. The maintenance and operating assessment for the General Common Elements is assessed against the Condominium Units in proportion to the number of votes in the FOA appertaining to each such Unit.

Unit 331 is owned by Gordon Properties. Storage Area Limited Common Elements (single user) appurtenant to Unit 331 are: 1B1, 1B2, 1C1, 1C2, 2B1, 2B2, and 2C1. In accordance with Virginia Code Ann. § 55-79.83(A), annual assessments for these Limited Common Elements (single user), as well as any other Limited Common Elements (single user) are limited to the actual expenses associated with the maintenance, repair, renovation, restoration, or replacement of those Limited Common Elements (single user) at the time such expenses were made or incurred.

In order to comply with the Declaration and By-Laws, the FOA, whether through its financial manager or otherwise, must utilize an accounting system which will accurately record and report all maintenance and operating expenses and reserve expenses and assign each expense, as and when incurred, to whichever of the six categories of Common Elements, as described in Sections III and IV of the Declaration, for which those expenses were incurred.

## III. *Conclusion*

The Court has determined that the Declaration, By-Laws, and Condominium Act set forth an appropriate methodology and scheme for establishing Assessments and for establishing and maintaining a reserve fund for the 4600 Condominium. As testified to by the current and prior financial managers of the FOA, as well as the parties' expert witnesses, the governing documents at issue are extremely complicated, convoluted, and difficult to apply. In addition, based on the evidence adduced at trial, the FOA and the Board did not always adhere to the required methodology. Because the Court assumes that the current Board of Directors and all future boards will follow the dictates of the Declaration, By-Laws, and Condominium Act as interpreted by the Court in this Letter Opinion, the Court declines to issue a permanent injunction as requested by Gordon Properties.

### April 3, 2009

Pending before the Court are several post-trial motions. After hearing argument of counsel, the Court ruled on certain motions and took others under advisement. Below are the Court's rulings.

### A. *The Motions the Court Ruled On at the Hearing*

(1) *Gordon Properties' Motion for Reconsideration and a New Trial on Gordon Properties' Storage Area Damages Claim*

The Court denied this motion finding that the evidence established that the Association incurred expenses, albeit limited, with respect to the storage areas for which Gordon Properties was responsible, that, under the Condominium Act, as well as the Declaration, unit owners can be assessed the expenses of maintenance and operation for single user limited common elements, and that Gordon Properties failed to present sufficient evidence upon which the jury could base a damage award. See *Sunrise Continuing Care, L.L.C. v. Wright*, 277 Va. 148, 671 S.E.2d 132 (2009). Specifically, Gordon Properties presented no evidence as to either the amount of the expenses that it should be properly assessed for its use and maintenance of the storage areas or what would constitute a reasonable user fee with respect to the storage areas. For these reasons, Gordon Properties' motion for reconsideration and a new trial is denied.

*(2) Association's Motion to Reconsider or for Clarification of February 23, 2009, Letter Opinion*

The Association seeks reconsideration and/or clarification of five issues. With the exception of issue (3), which the Court took under advisement, the Court ruled as follows. Regarding issue (1) (categorization of passenger elevators), the Court found that, pursuant to Va. Code Ann. § 55-79.51, the definition of commercial limited common elements and residential/commercial limited common elements as contained in Sections III.B(2) and (3) of the Declaration is controlling. As for issue (2) (the parking space limited common element (single user)), the Court found that these limited common elements were the subject of Gordon Properties' requests for relief in Count I of the Amended Complaint and, therefore, declined to reconsider or clarify this issue. As to issue (4) (compliance with Exhibit D with respect to assessments related to commercial limited common elements), the Court, in interpreting the governing documents, determined that, under Section V of the Declaration, the unit owners bear the responsibility for the costs of maintenance and operation of the commercial limited common elements based on the allocations set forth in Table D of Exhibit D to the Declaration. To the extent that there is an error in the percentages such that they do not add up to 100 percent, as required by the Condominium Act, the Association can take corrective action to remedy this defect if it so chooses. Finally, as to issue (5) (reserve assessments), the Court ruled that those portions pertaining to the reserve assessments (section III, paragraphs (1) and (2) of Letter Opinion) only apply to reserves going forward and do not apply to the prior years' or the current year's reserve amount.

B. *The Motions Taken under Advisement*

*(1) Association's Motion to Set Aside the Jury's Verdict as to Count 1 of the Amended Counterclaim*

With respect to Count I of the Amended Counterclaim, the jury found that Gordon Properties did not breach its contract with the Association by paying its assessments into an unauthorized bank account set up by Condominium Services, Inc. (CSI). In determining whether to set aside a jury's verdict under Va. Code § 8.01-430, the applicable legal standard is whether the jury's verdict is contrary to the evidence or without credible evidence to support it.

Upon consideration of the evidence presented at trial, the written memoranda, and arguments of counsel and applying the applicable standard, the Court denies the Association's motion to set aside the jury's verdict on Count I of the Amended Counterclaim and enters judgment in favor of Gordon Properties.

*(2) Association's Motion to Reconsider the Court's Entry of Judgment in Favor of Gordon Properties on its Claim for Ejectment*

In Count II of the New Matters set forth in Gordon Properties' Answer to the Association's Amended Counterclaim, Gordon Properties asserted a claim for ejectment relating to storage area 1C2. At trial, the evidence showed that, in a Deed of Bargain and Sale dated October 31, 1988, West End Corporation (the predecessor-in-interest to Gordon Properties), "for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration," conveyed to the Association Condominium Unit No. 323, "and the common elements appurtenant thereto, including the Limited Common Element Storage Space No. 1C2. . . ." (Defendant's Exhibit 5.) The deed was signed by Cornelius Doherty, president of West End Corporation. The evidence also showed that the requirements of Va. Code §§ 55-79.57(A) and (B) were not met in that the purported conveyance of storage area 1C2 was not reflected by the condominium instruments as an amendment to the condominium instruments and was never recorded. Despite the failure to comply with the Condominium Act, the evidence showed that the Association has used storage area 1C2 for at the last twenty years even though it continued to charge Gordon Properties an assessment for this limited common element based on a 1990 Resolution of the Association's Board of Directors pertaining to the storage areas. (Defendant's Exhibit 6.) The Association argued at trial, and renews its argument in its motion to reconsider, that the doctrine of estoppel by deed precludes Gordon Properties from asserting a claim to storage area 1C2. In response, Gordon Properties contends that Va. Code § 55-79.57 "trump[s] the common law property rule known as estoppel by deed and any instruments purporting to convey limited common elements must comply with its terms." ("Memorandum of Law in Opposition to First Owners' Motion for Reconsideration of the Court's Ruling on Gordon Properties' Ejectment Claim" at p. 2.) Gordon Properties also argues that there was no reliance by the Association on the 1988 deed as evidenced by a letter dated May 24, 2008, from the Association's president to counsel for Gordon Properties responding to Gordon Properties' revocation of its consent allowing the Association to use storage areas 1C1 and 1C2. (Plaintiff's Exhibit 47.) In

the letter, the Association states that it "has not been using these storage areas" and that "Storage Area 1C2 has been partially converted to storage 'cages' " and it "believe[s] that most if not all of those cages were assigned by Condominium Services, Incorporated, to the commercial tenants it serviced as agents for Gordon Properties." (*Id.*) Moreover, it was not until recently that former general manager of the Association, Steven Hurwitz, actually located the 1988 deed. Gordon Properties further contends that regardless of whether the estoppel by deed doctrine is applicable, Gordon Properties' claim is not in derogation of the deed because storage area 1C2 was never an appurtenance to Unit 323, but rather to Unit 331.

After further consideration of this matter, the Court grants the Association's motion to reconsider Count II of the New Matters and grants judgment in favor of the Association on Gordon Properties' ejectment claim relating to storage area 1C2. The Court agrees with the Association that the doctrine of estoppel by deed applies and, as between the parties to the 1988 deed, including any successors-in-interest, storage area 1C2 was conveyed to the association. As noted in *Hurley v. Charles*, 112 Va. 706, 711, 72 S.E. 689, 691 (1911), "[t]he rule is well established that where the deed recites or affirms, expressly or impliedly, that the grantor is seised of a particular estate, which the deed purports to convey, and upon the faith of which the bargain was made, he will be thereafter estopped to deny that such an estate was passed to his vendee, although the deed contains no covenant of warranty at all." In *Hurley*, the fact that the deed was never recorded, while void as to any creditors of the grantor or other third parties, would not prevent the grantor from being estopped from claiming an interest against the grantee. See also *1924 Leonard Road, L.L.C. v. Van Roekel*, 272 Va. 543, 636 S.E.2d 378 (2006), quoting from *Barris v. Keswick Homes, L.L.C.*, 268 Va. 67, 73, 597 S.E.2d 54, 58 (2004) ("the doctrine of estoppel by deed provides that equity will not permit a grantor, *or one in privity* with him, to assert anything in derogation of an instrument concerning an interest in real or personal property as against the grantee or his successors") (Emphasis added). Accord, *Lee v. Front Royal-Riverton Improvement Co.*, 7 Va. Cir. 241, 242 (1984). There are no cases applying this doctrine to a deed conveying condominium units or limited common elements; however, nothing in the Condominium Act appears to abrogate this common law principle in that it only applies as between a grantor and grantee.

Though it is true that storage area 1C2 is not, and was not, an appurtenance to Unit 323, as between the grantor, West End Corporation, and the grantee, the Association, the deed evidences a clear and unambiguous conveyance of storage area 1C2 for good and valuable consideration. The

situation herein is distinguishable from that in *Barris v. Keswick Homes, L.L.C.*, in which the defendant argued that, even if the plain language of the instrument in question did not effectively release a lot from a restrictive covenant, "whether the parties to the . . . instrument had the authority or intent to release [the lot] from the covenant in perpetuity, that is the effect of the language of the instruments" and the parties and their successors in interest are estopped from denying its effect. The Supreme Court rejected such an argument finding that the "clear intent of the parties to the . . . instrument was to give effect to the authority granted by the restrictive covenant to consent to a one-time resubdivision of Lot 7 and that resubdivision has occurred." *Barris v. Keswick Homes, L.L.C.*, 268 Va. at 73, 597 S.E.2d at 58. In so finding, the Supreme Court held that "enforcement of the restrictive covenant against a lot created by the one-time resubdivision of [the lot] would not be in derogation of the . . . instrument." *Id.* Here, Gordon Properties' claim for ejectment against the Association is in derogation of the 1988 deed. The plain language of the deed demonstrates an intent by West End Corporation, as signed by its president, Mr. Doherty, to convey storage area 1C2 to the Association. Further support as to the intent to convey this storage area is evidenced by the Distribution and Confirmation Deed dated October 30, 2002, signed by Cornelius Doherty, in which West End Corporation conveyed to Gordon Properties, West End Corporation's successor-in-interest, various condominium units along with storage area limited common elements, but *not* 1C2 which was appurtenant to Unit 331, a unit conveyed to Gordon Properties in the Distribution and Confirmation Deed.

Finally, to the extent that the parties failed to comply with Va. Code § 55-79.57(B), this can be remedied by execution of an amendment to the Declaration reflecting the reassignment of storage area 1C2 to the Association.

*(3) The Association's Motion to Reconsider the Court's Determination That Assessments for the Single User Limited Common Elements Are Governed by Va. Code § 55-79.83(A)*

In the February 23, 2009, Letter Opinion, the Court concluded that assessments for Limited Common Elements (single user) should be governed by Va. Code § 55-79.83(A). Upon further reflection and consideration of the applicable authorities, the Court now determines that such a conclusion is contrary to the Declaration and the Condominium Act. To conclude, as the Court previously did, that § 55-79.83(A) governs the assessments for Limited Common Elements (single user) would effectively exclude the cost of maintenance and operation incurred with respect to those Limited Common

Elements (single user). The Limited Common Elements (single user) specifically at issue are the storage areas, but parking garage and spaces are also categorized in the Declaration as Limited Common Elements (single user). See Declaration, Article III(A)(1). Article V, Section B, provides: "The cost of maintaining and operating the limited common elements . . . shall be borne among the unit owners having limited common elements appurtenant to their units." In Article V(B)(1), the Declaration provides: "As applicable, a unit owner whose unit has assigned to it a limited common element (single user) shall share in the *expense and maintenance* of the limited common element of which his assigned space is a part." (Emphasis added.) Thus, when Articles V(B) and V(B)(1) are read together, the Declaration expressly provides that a unit to which a Limited Common Element (single user) has been assigned is responsible to pay for the expenses relating to the maintenance and operation or use of that Limited Common Element.

Section 55-79.83(B) of the Condominium Act clearly mandates that, where the condominium instruments "expressly so provide," common expenses that benefit less than all of the condominium units "shall be specially assessed against the condominium unit or units involved with such reasonable provisions as the condominium instruments may make for such cases." Evidence at trial established that such common expenses may include expenses such as electricity, security, and insurance, all of which the evidence showed were incurred to a limited extent with respect to the Limited Common Elements (single user) at issue. These expenses were incurred in relation to the use and operation of the Limited Common Elements (single user). Pursuant to § 55-79.83(B) the executive organ is empowered to impose reasonable user fees in order to recover for the expenses for the use and operation of the storage areas which are Limited Common Elements (single user). In this case, because nothing in Exhibit D to the Declaration addresses Limited Common Elements (single user), the Board of Directors, in 1989, enacted a resolution to impose an assessment for the use of the storage areas (Defendant's Exhibit 6) which is consistent with the requirement in the Declaration that the cost of maintaining and operating the Limited Common Elements (single user) "be borne among the unit owners having Limited Common Elements (single user) appurtenant to their units." Declaration, Article V(B). No evidence was introduced at trial that the assessment or user fee for the use of the storage areas was unreasonable.

A close reading of § 55-79.83(A) of the Condominium Act reveals that this section concerns periodic expenses associated with only the maintenance, repair, renovation, restoration, or replacement of any limited common element and not with ongoing expenses of use and operation. The language of § 55-

79.83(A) makes this clear in that it provides that such expenses of maintenance, repair, etc. "shall be specially assessed against the condominium unit to which that limited common element was assigned *at the time such expenses were made or incurred*." (Emphasis added.)

For these reasons, the Court grants the Association's motion to reconsider this issue previously addressed in the Court's February 23, 2009, Letter Opinion and concludes that Va. Code § 55-79.83(B), *not* § 55-79.83(A), governs the assessment of the Limited Common Elements (single user) and allows the Association to impose a reasonable user fee.