COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Ortiz and Senior Judge Clements
Argued at Leesburg, Virginia

DORCON GROUP, LLC

MEMORANDUM OPINION[*] BY
v.        Record No. 1081-22-4         JUDGE CLIFFORD L. ATHEY, JR.
                                        AUGUST 1, 2023

TODD J. WESTRICK, ET AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

Scott D. Helsel (Philip Carter Strother; Walton & Adams, P.C.;
Strother Law Offices, PLC, on briefs), for appellant.

Stephen C. Price (Theresa D. Small; McCandlish & Lillard, P.C., on
brief), for appellees.

Dorcon Group, LLC ("Dorcon Group") appeals from the decision of the Circuit Court of

Loudoun County ("circuit court") which refused to award Dorcon Group declaratory and

injunctive relief in their dispute with fellow Berkeley Chase Subdivision lot owners (collectively

"the lot owners") concerning the interpretation and construction of the Berkeley Chase "Deed of

Subdivision and Imposition of Restrictive Covenants and Road Agreement" ("the 1981 Deed").

On appeal, Dorcon Group alleges that the circuit court erred by: (1) finding that the term

"modified" in the 1981 Deed was unambiguous and that the new restrictive covenant adopted by

a "supermajority vote" without Dorcon Group's consent was lawful; (2) failing to find that the

new restriction inequitably and unreasonably burdened Dorcon Group's lot; (3) failing to find

that Dorcon Group lacked horizontal privity with its fellow lot owners, making the new

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

restriction invalid and unenforceable; and (4) failing to consider Dorcon Group's request for attorney fees. Because we find that the circuit court erred in its interpretation of the word "modified," we reverse the judgment of the circuit court and remand for proceedings in accordance with this opinion.

## I. BACKGROUND

The Berkeley Chase subdivision ("Berkeley Chase") was created by deed in 1981 and is located in the Bluemont region of western Loudoun County. The 1981 Deed imposes restrictive covenants on the lots within Berkeley Chase and excepts lots 5, 21, 22, and 23 from certain restrictive covenants in Paragraphs 1 and 10. Paragraph 1 imposes a residential-use covenant on all the lots within the subdivision, excepting lots 5, 21, 22, and 23. Paragraph 1 further provides that the excepted lots 5, 21, 22, and 23 may be used "for such non-residential purposes as approved by the Loudoun County Zoning and Subdivision Ordinances including, but not limited to, specific execptions [sic], conditional permits and Board of Zoning Appeals decisions as may be requested and granted from time to time." Paragraph 10 excepts lots 5, 21, 22, and 23 from a commercial crop-raising restriction applicable to all the other lots within the subdivision.

Paragraph 19 of the 1981 Deed details the duration of these restrictive covenants and how the covenants, in whole or in part, can be subsequently excepted, modified, or vacated:

> These restrictions shall constitute covenants running with the land and shall be effective for a period of twenty years until January 1, 2001, and thereafter shall be extended for further periods of twenty years each, unless by vote of the owners of seventy-five percent (75%) of the parcels improved with dwelling unites [sic] it is agreed to change the covenants in whole or in part, provided further, that these restrictions may be excepted, modified, or vacated in whole or in part at any time upon an affirmative vote of the owners of twenty three (23) lots in said subdivision.

Dorcon Group purchased Lot 5, a 40-acre lot, which was excepted from the restrictive covenant requiring that only residential uses were permitted. Dorcon Group sought to open a

commercial bed and breakfast business on Lot 5, which would also host special events. Following Dorcon Group's purchase, the lot owners voted to modify the 1981 Deed. The lot owners subsequently recorded the amended 1981 Deed ("the 2020 Amendment"). In adopting the 2020 Amendment, the lot owners relied for authority upon the clause in Paragraph 19, which states: "these restrictions may be excepted, modified, or vacated in whole or in part at any time upon an affirmative vote of the owners of twenty-three (23) lots" in the subdivision. The 2020 Amendment included a new restrictive covenant that, subject to several exceptions, prohibited "[c]ommercial activities on any lot" in Berkeley Chase. The new Paragraph 21(c) added in the 2020 Amendment provides the following exception:

> Bed and Breakfast operations in which overnight accommodations are provided to the public in an owner-occupied dwelling or in the lot's authorized guest house, but the frequency and volume of paying guests must be incidental to the primary use of the property as a private residence, and such operations may not extend to commercially hosting parties, weddings or similar special events.

In response to the 2020 Amendment, Dorcon Group filed an amended complaint seeking declaratory and injunctive relief against the lot owners by asserting that: (1) the 25 lot owners failed to comply with the Property Owners Association Act (Count I); (2) the 2020 Amendment violated the express language and original intent of the 1981 Deed (Count II); (3) the 1981 Deed failed to authorize the adoption by 25 lot owners of new restrictive covenants (Count III); (4) the 2020 Amendment impacted the lots in the subdivision inequitably (Count IV); and (5) the lot owners, in amending the restrictive covenants, engaged in a statutory business conspiracy (Count V). The lot owners filed a plea in bar as to Count I of the amended complaint and a demurrer as to Count V, both of which the circuit court sustained.

Following a bench trial on the remaining Counts II, III, and IV, the circuit court dismissed Dorcon Group's amended complaint, holding that the "lynchpin" to resolve the issues raised in Dorcon Group's amended complaint was the term "modify" in Paragraph 19 of the 1981 Deed. It

- 3 -

held that the term "modify" in the 1981 Deed was unambiguous, concluding therefrom that the lot owners had not violated the express language of the 1981 Deed (Count II). It further held that the lot owners were authorized—pursuant to the express provisions of the 1981 Deed—to modify its provisions and that the lot owners had done so equitably (Count III and IV). Finally, the circuit court held that Dorcon Group "was on notice at the time [it] acquired the parcel" that the lot owners, could, at some time in the future, modify the 1981 Deed. Dorcon Group appealed.

## II. ANALYSIS

### A. *Standard of Review*

"The proper construction of restrictive covenants is a question of law that we review de novo." *Sainani v. Belmont Glen Homeowners Ass'n, Inc.*, 297 Va. 714, 722 (2019). In reviewing a contract, "we are not bound by the trial court's conclusions as to the construction of the disputed provisions." *Smith v. Smith*, 3 Va. App. 510, 513 (1986). "Whether a contract entitles the prevailing party to attorney fees is a question of law that we review 'de novo.'" *Worsham v. Worsham*, 74 Va. App. 151, 178 (2022) (quoting *Online Res. Corp. v. Lawlor*, 285 Va. 40, 61 (2013)).

### B. *The circuit court erred in holding that the word "modified" in the 1981 Deed allowed the lot owners to impose a new restrictive covenant.*

Dorcon Group contends that the term "modified" in Paragraph 19 of the 1981 Deed is ambiguous and renders the 1981 Deed unenforceable. Dorcon Group further argues that the 2020 Amendment is unenforceable based on: the plain language of Paragraphs 1 and 19, the principles of contractual construction, and parol evidence—namely, the testimony of the 1981 Deed's drafter. Although we disagree that the 1981 Deed is ambiguous, we hold that the 2020 Amendment is nonetheless unenforceable because the plain meaning of the term "modified" does not permit the addition of a new restrictive covenant.

- 4 -

"[R]estrictive covenants on land are not favored and must be strictly construed." *Barris v. Keswick Homes, L.L.C.*, 268 Va. 67, 71 (2004). While ambiguity in a restrictive covenant is "resolved against the restrictions and in favor of the free use of property," if the terms of the covenant "are clear and unambiguous" then the plain meaning of the covenant's terms will be ascribed to the language used. *Id.* "Generally, a restrictive covenant cannot be modified or terminated except by agreement of all the parties entitled to enforce the covenant." *Id.* "In the absence of an agreement to the contrary, existing restrictions cannot be amended or terminated unless *all* parties affected by the restrictions, or their successors, agree to the amendment or termination." *Hening v. Maynard*, 227 Va. 113, 117 (1984). When a restrictive covenant limits land use to residential purposes, using the land for business violates that covenant. *Scott v. Walker*, 274 Va. 209, 214 (2007); *see also Deitrick v. Leadbetter*, 175 Va. 170 (1940) (noting that the buyer had notice because the restrictive covenant limiting her use of the property to residential purposes was in the title to the property).

"[W]hen contract terms are clear and unambiguous, we must construe those terms according to their plain meaning. Additionally, we will not insert by construction, for the benefit of a party, a term not express in the contract." *Lansdowne Dev. Co., L.L.C. v. Xerox Realty Corp.*, 257 Va. 392, 400 (1999) (internal citation omitted). "[T]he word 'ambiguity' is defined as 'the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time.'" *Waynesboro Village, L.L.C. v. BMC Properties*, 255 Va. 75, 80 (1998) (quoting *Webster's Third New Int'l Dictionary* 66 (3d ed. 1976)). "Generally, extrinsic evidence is not admissible to vary the terms of a written instrument. . . . Extrinsic evidence can be admitted to explain an ambiguity in a document. However, the ambiguity must be apparent on the face of the instrument." *Cohan v. Thurston*, 223 Va. 523, 524-25 (1982). When contractual language is not ambiguous and can be "readily understood in accordance with the plain meaning

of its language, this Court need not employ extraordinary canons of construction." *See TravCo Ins. Co. v. Ward*, 284 Va. 547, 558 (2012).

The 1981 Deed contains several restrictive covenants imposed on the lot owners. Three of those covenants had express exceptions for certain lots in Berkeley Chase, such as Lot 5. The 1981 Deed provides "that these restrictions may be excepted, modified, or vacated in whole or in part at any time upon an affirmative vote of the owners of twenty-three (23) lots in said subdivision." The circuit court subsequently held that the meaning of the term "modified" in the 1981 Deed was unambiguous and further reasoned that the amendments adopted by owners of 25 lots in the subdivision were merely permitted modifications to the 1981 Deed.

In our review of the circuit court's determination, we first turn to the issue of whether the amendments adopted can be characterized as either excepting, vacating, or modifying the 1981 Deed. To "except" implies the further limiting of an existing restrictive covenant in a certain manner or with respect to a certain lot or lots.[1] Also, the use of the term "vacated" implies the removal or cessation of a particular restriction altogether.[2] Since neither "excepted" nor "vacated" seems applicable to the changes adopted by the lot owners here, we must next determine whether the changes adopted by the lot owners meet the definition of "modified" as reflected in the 1981 Deed.

Presently, Black's Law Dictionary defines "modify" as "[t]o make somewhat different; to make small changes to (something) by way of improvement, suitability, or effectiveness" or "to make more moderate or less sweeping; to reduce in degree or extent; to limit, qualify, or moderate."

---

[1] *Exception*, *Black's Law Dictionary*, *supra* ("The retention of an existing right or interest . . . . The exclusion from a legal description of part of real property . . . .").

[2] *Vacate, Black's Law Dictionary*, *supra* (Meaning "to nullify or cancel" or "make void" or "invalidate.").

*Modify*, *Black's Law Dictionary* (11th ed. 2019).[3]  While "modification" as included in the 1981 Deed may encompass either enlarging or reducing the scope of an existing restriction, an *addition* is markedly different than a modification and is not an enlargement, reduction, or other limited change.  Thus, we conclude that while a modification may *amend* a restrictive covenant, it does not encompass the *addition* of an entirely new restrictive covenant that was not present in the original version of the 1981 Deed.

The Supreme Court found in *Hening v. Maynard* that when later parties attempted to amend a restrictive covenant in an agreement, the claimed amendment "create[ed] a more restrictive neighborhood within the subdivision," and thus could not be considered an amendment of the original deed, but a separate agreement altogether.  277 Va. at 117.  Similarly, here the 2020 Amendment adopts new restrictive covenants under the guise of "modifications."  Even though the 2020 Amendment states that the newly added Paragraph 21 only seeks to "amend the Restrictive Covenants," the lot owners failed to identify any restrictive covenant being modified.  In fact, the 2020 Amendment explicitly states that "[i]n all other respects the Restrictive Covenants shall remain in full force and effect."

While the 1981 Deed does give lot owners the ability to "modif[y] . . . [the restrictions] in whole or in part" through a voting mechanism, there is no provision in the 1981 Deed that would extend modifications to the restrictive covenants to encompass wholesale additions of new covenants.  If this were the case, then the 1981 Deed would effectively permit new restrictive covenants to be added without requiring all the lot owners in the subdivision to agree to the new covenant.  As a result, although we agree with the circuit court that the term "modify" in the 1981 Deed is unambiguous, we disagree that the 2020 Amendment was only a simple and permissible

---

[3] In 1981, when the subdivision was created, the definition of modify was largely the same: "[t]o alter; to change in incidental or subordinate features" or "to amend," "enlarge," "extend," "limit," or "reduce."  *Modify*, *Black's Law Dictionary* (5th ed. 1979).

modification of existing restrictions in the 1981 Deed. Instead, we find that the 2020 Amendment imposed new restrictive covenants, which were not permitted under the terms of the 1981 Deed.

Because the 2020 Amendment was more than a simple "modification" of a restrictive covenant, the 23-vote requirement to amend the 1981 Deed was not applicable, and the lot owners acted impermissibly. *Barris*, 268 Va. at 71 ("[A] restrictive covenant cannot be modified or terminated except by agreement of all the parties entitled to enforce the covenant."). Thus, there being no pathway for establishing new restrictive covenants in the 1981 Deed, by default, unanimity is required under the *Barris* rule for the lot owners to add a new restrictive covenant.

C. *The trial court did not err in refusing to consider Dorcon Group's request for attorney fees.*

Dorcon Group also assigns error to the trial court's failure to consider its request for an award of attorney fees. We disagree.

Generally, "in the absence of a statute or contract to the contrary, a court may not award attorney's fees to the prevailing party." *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 92 (1999). "A party seeking to recover attorney fees must demand them in the complaint . . . counterclaim . . . cross-claim . . . third-party pleading . . . or in a responsive pleading" and "must identify the basis" for requesting such fees." Rule 3:25(b). Paragraph 18 of the 1981 Deed states "an individual owner shall have the right to enforce the restrictive covenants herein contained by actions in law or equity. Should . . . such individual owner prevail, the prevailing party shall be entitled to recover reasonable counsel fees and court costs incurred in enforcing the restrictive covenants."

In its amended complaint, Dorcon Group sought attorney fees based solely on the Virginia Property Owners Association Act and the Business Conspiracy Statute. Separately, Dorcon Group specifically included the claim for "reasonable attorneys' fees" pursuant to Paragraph 18 of the 1981 Deed both in its pretrial brief as well as during its closing argument at

trial.  Regardless of whether Dorcon Group properly preserved the demand for attorney fees pursuant to Rule 3:25,[4] we disagree that Dorcon Group can recover "reasonable attorneys' fees" under Paragraph 18 because Dorcon Group is not seeking to "enforce[e] the restrictive covenants," but is instead seeking to clarify the meaning of a term in the 1981 Deed.  We disagree that Dorcon Group's complaint seeking declaratory and injunctive relief is an enforcement action within the meaning of Paragraph 18.

### III. CONCLUSION

For the foregoing reasons, we reverse the circuit court's holding that the 2020 Amendment was a modification of the 1981 Deed.  Since we reverse on Dorcon Group's first assignment of error, it is unnecessary for us to reach the second and third assignments of error,[5] as the doctrine of judicial restraint obligates us to reach decisions on the best and narrowest grounds available.  *See Commonwealth v. White*, 293 Va. 411, 419 (2017).

*Reversed and remanded.*

---

[4] The lot owners contend that since Dorcon Group failed to reference Paragraph 18's attorney fees provision in its amended complaint that Dorcon Group's untimely claim for attorney fees is waived.

[5] Dorcon Group's second assignment of error was the trial court erred by not considering Dorcon Group's argument that the 2020 Amendment's new restriction is invalid and unenforceable because it inequitably and unreasonably burdens Dorcon Group's lot.  Dorcon Group's third assignment of error is that the trial court erred in not considering whether the lot owners and Dorcon Group had horizontal privity.